1   Douglas J. Rovens (State Bar # 106582)
    *drovens@ssd.com*
2   Jeffrey S. Renzi (State Bar # 221963)
    *jrenzi@ssd.com*
3   SQUIRE, SANDERS & DEMPSEY L.L.P.
    555 S. Flower St., 31st Floor
4   Los Angeles, CA 90071
    Telephone:    (213) 624-2500
5   Facsimile:    (213) 623-4581

6   Attorneys for Defendant
    4ACCESS COMMUNICATIONS COMPANY
7

8               UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11  VAL POPESCU, an individual;                 **Case No.  3:08 CV 00525 JM RBB**

12              Plaintiff,                       **DEFENDANT 4ACCESS**
                                                 **COMMUNICATIONS COMPANY'S**
13          vs.                                  **NOTICE OF MOTION AND MOTION TO**
                                                 **DISMISS FOR IMPROPER VENUE;**
14  4ACCESS COMMUNICATIONS                       **MEMORANDUM OF POINTS AND**
    COMPANY, a Delaware corporation, and         **AUTHORITIES AND DECLARATION OF**
15  DOES 1 through 10, inclusive,                **STEVEN D. DAVIS IN SUPPORT**
                                                 **THEREOF**
16              Defendants.
                                                 [*Declaration of Steven D. Davis and Request*
17                                               *for Judicial Notice filed and [Proposed] Order*
                                                 *lodged concurrently herewith*]
18
                                                    **[Fed. R. Civ. Proc. 12(b)(3)]**
19
                                                 The Honorable Jeffrey T. Miller
20
                                                 Hearing  Date: May 30, 2008
21                                               Time:    1:30 p.m.
                                                 Place:   Courtroom 16
22
                                                    [Oral Argument Requested]
23

24

25

26

27

28

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 30, 2008, at 1:30 p.m. or as soon thereafter as this matter may be heard in Courtroom 16 of the United States District Court for the Southern District of California, located at 940 front Street, San Diego, California, before the Honorable Jeffrey T. Miller, defendant 4Access Communications Company ("4Access"), will and hereby does move the Court for an Order Dismissing plaintiff Val Popescu's First Amended Complaint ("FAC") on the basis of improper venue. 4Access moves to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(3), based on the mandatory forum-selection clause in the operative employment agreement between the parties.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, 4Access' Request for Judicial Notice pursuant to Rule 201 of the Federal Rules of Evidence, and the Declaration of Steven D. Davis, both filed concurrently herewith, as well as the pleadings, records, and documents on file and any oral argument and additional evidence the Court may consider at the hearing on this Motion.

Dated: April 25, 2008                     SQUIRE, SANDERS & DEMPSEY L.L.P.


By:_____ s/ Jeffrey S. Renzi_____
Douglas J. Rovens
Jeffrey S. Renzi
Attorneys for Defendant
4ACCESS COMMUNICATIONS COMPANY

SQUIRE, SANDERS &
DEMPSEY L.L.P.
555 S. Flower Street, Suite 3100
Los Angeles, CA 90071

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. INTRODUCTION

On November 2, 2006, plaintiff Val Popescu ("Plaintiff") filed a lawsuit in the California Superior Court, San Diego County (Val Pospecu, etc., v. 4 Access Communications, Inc., etc. Case No. GIN056734, attached as Exh. A to the Request for Judicial Notice) against 4Access Communications Company ("4Access") for claims related to Plaintiff's employment at 4Access, seeking unpaid wages for breach of employment contract, among other related claims ("*Popescu I*"). Following removal of *Popsecu I* to this Court, *Popescu I* was dismissed pursuant to 4Access' motion to dismiss under Rule 12(b)(3) of the Federal Rules of Civil Procedure for improper venue because of a forum selection clause in the agreement between the parties. *See Popescu v. 4Access Communications, Inc.*, 2007 U.S. Dist. LEXIS 21822 (S.D. Cal. March 26, 2007) at *6, attached as Exh. B to the Request for Judicial Notice. On January 9, 2008, apparently disregarding this Court's prior ruling, Plaintiff filed the instant lawsuit, again in the California Superior Court, San Diego County (Val Popescu, etc., v. 4Access Communications Company, etc., Case No. 37-2008-00075299-CU-WT-CTL) which also arises from his employment at 4Access, seeking unpaid wages for breach of employment contract, among other related claims ("*Popescu II*"). 4Access removed *Popescu II* to this Court. As in *Popescu I*, the Court should dismiss Plaintiff's FAC pursuant to Fed. R. Civ. Proc. 12(b)(3).

### 2. ARGUMENT

#### A. The Forum Selection Clause

Paragraph 6.6 of the Employment Agreement between Plaintiff and 4Access, dated February 28, 2002 (the "Employment Agreement"), contains a mandatory forum selection clause, requiring that all disputes brought under the Employment Agreement be resolved in Illinois:

> Any judicial proceedings between the parties under this Agreement shall be brought in the Circuit Court of Cook County, Illinois, or the United States District Court for the Northern District of Illinois, Eastern District.

SQUIRE, SANDERS & DEMPSEY L.L.P.
555 S. Flower Street, Suite 3100
Los Angeles, CA 90071

- 2 -

(Declaration of Steven D. Davis ("Davis Decl."), Exh. A at 5).   This Court upheld the enforceability of the clause and its application to the employment relationship between the parties in *Popescu I. See Popescu*, 2007 U.S. Dist. LEXIS 21822 at *6.

**B. The Employment Agreement Controls The Relationship Of The Parties For Plaintiff's Claims**

*i) This Court Already Has Held That The Employment Agreement Governs Plaintiff's Employment During The Time Period Raised In The FAC*

Plaintiff asserts claims in the FAC for breach of contract for unpaid wages and stock options, labor supplied, wage and hour violations for lack of payment, and wrongful discharge. Each of Plaintiff's claims arises from his employment at 4Access and therefore are governed by the written Employment Agreement between Plaintiff and 4Access.   Plaintiff attempts to avoid the forum selection in the Employment Agreement by creatively crafting the FAC to limit his claims to his time as an "at-will employee" at 4Access.  (FAC, ¶ 2).[1]  Plaintiff attempted a similar tactic at the hearing on 4Access' motion to dismiss filed in *Popescu I* when he offered to sever the claims during the "contractual employment period" from the "at-will employment period." *Popescu*, 2007 U.S. Dist. LEXIS 21822 at *5 n.1.  The Court dismissed the offer, finding that allowing Plaintiff to proceed on claims arising during the at-will period did not avoid the forum selection clause.  *Id.*   Indeed, the Court held that "the heart of this case is the employment relationship between the parties, a relationship that flows from the" Employment Agreement. *See id.* at *5.  By bringing the instant action, Plaintiff has ignored the tutelage of the Court in *Popescu I.*

*ii) The Terms Of The Employment Agreement Confirm that Like Popescu I It Is Applicable To Plaintiff's Claims in Popescu II*

Beyond the Court's earlier ruling that the forum selection clause is applicable to claims arising during Plaintiff's tenure as an at-will employee at 4Access, a review of relevant sections of the Employment Agreement confirm that agreement is applicable to the instant matter.  In the

---

[1] Plaintiff did not attach the Employment Agreement to either the original or amended complaint.

SQUIRE, SANDERS & DEMPSEY L.L.P.
555 S. Flower Street, Suite 3100
Los Angeles, CA 90071

1    Employment Agreement, the parties anticipated that Plaintiff's contractual <u>and</u> subsequent at-will

2    employment periods both would be covered by its terms:

3           2.1  Duration. Subject to prior termination … the term of this
       Agreement shall commence on [March 1], 2002 and end upon the

4           expiration of twenty-four (24) months (the **Contractual**

5           **Employment Period**).  Thereafter, Employee's employment with
       Company shall continue at the will of the Company (the **At Will**

6           **Employment Period**).  The entire period of time in which
       Employee is employed by Company shall be referred to as the

7           **Employment Period**. [emphasis supplied.]

8    (Davis Decl., Exh. A at 1).

9        Other provisions of the Employment Agreement demonstrate that it plainly controls all

10   aspects of the entire Employment Period, covering both the Contractual Employment Period <u>and</u>

11   the At Will Employment Period (the period Plaintiff puts at issue in this litigation):

12          2.2  Duties.  During the **Employment Period**, employee shall be

13          responsible for, and perform duties associated with the position of
       Chief Technology Officer … [emphasis supplied.]

14          2.3    Location and Performance by Employee.    During the

15          **Employment Period**, Employee shall perform his duties primarily
       at the Company's San Diego Office … [emphasis supplied.]

16   

17          4.0    Noncompetition.    Employee agrees that during the
       **Employment Period** and for a period of eighteen (18) months

18          thereafter, he will not [compete against 4Access] … [emphasis
       supplied.]

19   (Davis Decl., Exh. A at 1-3).

20       Plaintiff's allegations in the FAC specifically invoke the terms in the Employment

21   Agreement.  Indeed, Plaintiff admits that the salary terms that are crux of most of Plaintiff's

22   claims are specified in the Employment Agreement:

23          **Pursuant to the employment contract** between POPESCU and

24          4ACCESS, POPESCU was employed by 4ACCESS as an at-will
       employee.  **Pursuant to such contract**, POPESCU agreed to

25          provide work, labor and services to 4ACCESS, and 4ACCESS
       agreed to compensate POPESCU for such work, labor and services

26          at the rate of $175,000 per year. [emphasis supplied.]

27   

28

1    (FAC, ¶34).    The salary terms relied upon by Plaintiff are specified in the Employment

2    Agreement:

3
> 2.4 Base Salary. During the Contractual Employment Period, the
4
> Company shall pay the Employee and annual base compensation of
> One Hundred Seventy-Five Thousand dollars ($175,000) … During
5
> the **At Will Employment Period**, Employee's Base Salary may be
> increased or decreased in the discretion of the Company at any
6
> time. [emphasis supplied.]

7    (Davis Decl., Exh. A at 2). Thus, Plaintiff must rely on the terms of the Employment Agreement

8    for his claims in this matter.

9         The forum selection clause of paragraph 6.6 of the Employment Agreement applies to

10   "[a]ny judicial proceedings between the parties under this Agreement," and, as detailed above, the

11   Employment Agreement applies to the period during which Plaintiff was an at-will employee of

12   4Access.    By entering the Employment Agreement, the parties explicitly agreed that claims

13   arising from the At Will Employment Period are within the scope of the forum selection clause.

14   Plaintiff cannot legitimately claim that 4Access owes him unpaid wages pursuant to terms in the

15   Employment Agreement and simultaneously seek to avoid the forum selection clause in the

16   Employment Agreement through crafty averments in the FAC.

17        It is clear by the terms of the Employment Agreement itself, Plaintiff's own pleadings,

18   and this Court's opinion in *Popescu I*, that the At Will Employment Period is governed by the

19   terms of the Employment Agreement and that the Plaintiff's claims for breach of contract, labor

20   supplied, wage and hour violations, and wrongful discharge are thus subject to the forum

21   selection clause.

22   **C. The Court Should Grant The Motion To Dismiss Because The Forum Selection
     Clause In The Employment Agreement Is Mandatory And Enforceable**

23
          Forum selection clauses are to be considered "prima facie valid" by the courts and should
24
     not be set aside unless the party challenging such a clause can clearly show that enforcement
25
     would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or
26
     overreaching. *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972). A forum selection
27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
555 S. Flower Street, Suite 3100
Los Angeles, CA 90071
NOTICE OF MOTION AND MOTION TO DISMISS FOR IMPROPER VENUE

1  clause is grounds for a Fed. R. Civ. P. 12(b)(3) motion to dismiss for improper venue. *See*

2  *Argueta v. Banco Mexicana, S.A.*, 87 F3d 320, 324 (9th Cir. 1996).

3      A forum selection clause will be enforced where venue is specified with mandatory

4  language. *Docksider, Ltd. v. Sea Technology, Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989) ("This

5  mandatory language makes clear that venue, the place of suit, lies exclusively in the designated

6  county.   Thus, whether or not several states might otherwise have jurisdiction over actions

7  stemming from the agreement, all actions must be filed and prosecuted in Virginia.")   When a

8  mandatory forum selection clause clearly designates the forum chosen as the exclusive forum, it

9  is enforceable. *See id.*; *see also Koresko v. RealNetworks, Inc.*, 291 F. Supp. 2d 1157, 1160-61

10  (E.D. Cal. 2003).

11      In *Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 866-67 (9th Cir. 1991), the

12  Ninth Circuit dismissed a case pursuant to Fed. R. Civ. P. 12(b)(3) because the forum selection

13  clause in an employment contract between an employee in California and an employer in Saudi

14  Arabia stated: "'Saudi Arabia shall have sole jurisdiction over any disputes arising out of this

15  employment agreement.'"   In *Spradlin*, although the case was initially filed in the state of

16  California, the defendant employer successfully removed the case to federal court based on

17  diversity, and then prevailed in a motion to dismiss pursuant to improper venue under Fed. R.

18  Civ. P. 12(b)(3). *See Id.*

19      Similarly here, the Employment Agreement's forum selection clause must control, and the

20  removal of the case to federal court based on diversity of the parties does not affect or defeat the

21  fact that this claim could not be properly filed in California. *See Id.*   Furthermore, 4Access's

22  motion is proper pursuant to Fed. R. Civ. P. 12(b)(3), as a party may assert the defense of

23  improper venue by motion.

24      "[W]here the parties expressly contemplated resolution of their disputes in a foreign

25  venue, that decision should be given great weight." [citations omitted] *Palmco Corp. v. JSC*

26  *Techsnabexport*, 448 F. Supp. 2d 1194, 1199 (C.D. Cal. 2006).   In the present case, Plaintiff and

27  4Access agreed to the terms of the Employment Agreement, which contain a mandatory forum

28  selection clause for Cook County, Illinois.   The Employment Agreement was a negotiated

1  contract entered into by the parties acting at arms length (Davis Decl. at ¶ 4).  The forum

2  selection clause is unambiguous and clearly applies to "*any* judicial proceedings between the

3  parties under this Agreement." [emphasis supplied.]

4       As the Court noted in *Poepscu I*, any attempt by Plaintiff to claim wages for the At Will

5  Employment Period alone, the period relevant to Plaintiff's causes of action in this litigation, is

6  governed by the terms of the Employment Agreement and the forum selection clause applies.

7  Therefore, the Court should grant 4Access's motion for dismissal pursuant to Fed. R. Civ. P.

8  12(b)(3), for improper venue and this case should be dismissed so that it can be filed in the proper

9  jurisdiction.

10  ## 3.  CONCLUSION

11       Based on the foregoing, 4Access respectfully requests that the Court grant its Motion to

12  Dismiss as to all causes of action on the grounds of improper venue.

13

14  Dated: April 25, 2008           SQUIRE, SANDERS & DEMPSEY L.L.P.

15

16  By:       s/ Jeffrey S. Renzi

                Douglas J. Rovens

17                  Jeffrey S. Renzi

     Attorneys for Defendant

18       4ACCESS COMMUNICATIONS COMPANY

19  LOSANGELES/262245.6

20

21

22

23

24

25

26

27

28

**SQUIRE, SANDERS &**
**DEMPSEY L.L.P.**
555 S. Flower Street, Suite 3100
Los Angeles, CA 90071

# PROOF OF SERVICE

(Pursuant to Federal Law)

The undersigned certifies and declares as follows:

I am a resident of the State of California and over 18 years of age and am not a party to this action. My business address is 555 South Flower Street, 31st Floor, Los Angeles, California 90071-2300, which is located in the county where any non-personal service described below took place.

On April 25, 2008, a copy of the following document(s):

**DEFENDANT 4ACCESS COMMUNICATIONS COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS FOR IMPROPER VENUE; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF STEVEN D. AVIS IN SUPPORT THEREOF**

was served on:

Gregory P. Goonan, Esq.
The Affinity Law Group APC
600 West Broadway, Suite 400
San Diego, California 92101-3352
Telephone: (619) 446-5661
Facsimile: (619) 515-1197
ggoonan@affinity-law.com

Service was accomplished as follows.

☐ **By U.S. Mail.** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice the mail would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid of postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ **By Electronic Means.** On the above date, I filed the above-mentioned document(s) by electronic means with the Court. As such, the Court electronically mailed such document(s) to the parties noted above, whose electronic mail address is set forth above.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on April 25, 2008, at Los Angeles, California.

s/Jeffrey S. Renzi

_____
Jeffrey S. Renzi

1  Douglas J. Rovens (State Bar # 106582)
   *drovens@ssd.com*
2  Jeffrey S. Renzi (State Bar # 221963)
   *jrenzi@ssd.com*
3  SQUIRE, SANDERS & DEMPSEY L.L.P.
   555 S. Flower St., 31st Floor
4  Los Angeles, CA 90071
   Telephone:     (213) 624-2500
5  Facsimile:     (213) 623-4581

6  Attorneys for Defendant
   4ACCESS COMMUNICATIONS COMPANY
7

8            UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11  VAL POPESCU, an individual;              **Case No.  3:08 CV 00525 JM RBB**

12              Plaintiff,                   **DECLARATION OF STEVEN D. DAVIS IN
                                             SUPPORT OF DEFENDANT'S MOTION
13         vs.                               TO DISMISS FOR IMPROPER VENUE**

14  4ACCESS COMMUNICATIONS
    COMPANY, a Delaware corporation, and
15  DOES 1 through 10, inclusive,

16              Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

1

## DECLARATION OF STEVEN D. DAVIS

2

3    I, Steven D. Davis, declare as follows:

4        1.    I am the president of 4Access Communications Company ("4Access").  I submit

5    this declaration in support of 4Access' Motion to Dismiss for Improper Venue.  The following

6    facts are true and correct based upon my person knowledge and, if called as a witness, I could and

7    would competently testify thereto.

8        2.    In February 2002, 4Access entered into negotiations with Val Popescu for Mr.

9    Popescu to serve as its Chief Technology Officer ("CTO").

10       3.    On March 1, 2002, Mr. Popescu was hired as the CTO of 4Access.

11       4.    Attached hereto as Exhibit "A" is a true and correct copy of the Employment

12   Agreement (the "Employment Agreement") entered into between 4Access and Mr. Popescu.

13       5.    The Employment Agreement was a negotiated contract between Mr. Popescu and

14   4Access.  Various draft of the Employment Agreement were exchanged prior to the parties'

15   execution of the Employment Agreement.

16       I declare under penalty of perjury of the laws of the United States of America that the

17   foregoing is true and correct, and that this declaration was executed on this ²⁴ day of April

18   2008 at Chicago, Illinois.

19

20                                   _____

                                       Steven D. Davis

21

22

23

24   LOSANGELES/262243.3

25

26

27

28

- 2 -
DECLARATION OF STEVEN D. DAVIS

# EXHIBIT A

## Employment Agreement

This Employment Agreement (Agreement) is entered into as of February 27 , 002, between Val Popescu (Employee) and 4Access Communication Corporation (Company)(Employee and Company collectively referred to as the Parties) as follows:

### Recitals

1. Company is a Delaware corporation authorized to engage in all business lawful under the Delaware Business Corporation Act, including but not limited to designing, manufacturing, marketing, selling, maintaining and servicing communications and payment industry products..

2. Company has acquired customers and will continue to acquire customers, the relationships with whom would not be known to Employee but for his employment relationship with Company.

3. Company desires to employ Employee, and Employee desires to be employed by the Company, as Chief Technology Officer.

### Agreement

In consideration of the mutual promises, covenants and agreements herein contained, the recitals set forth above which by this reference are incorporated into this Agreement, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereby agree as follows:

**1.0 Incorporation of Recitals.** The Parties agree that the recitals to this Settlement Agreement are true and correct and represent essential considerations of the Parties in entering into this Agreement. The representations contained therein are hereby incorporated by reference into the body of this Agreement as substantive provisions and shall in all circumstances be used in interpreting this Agreement.

**2.0 Terms of Employment.** Company shall employ the Employee as a Chief Technology Officer pursuant to the terms and conditions set forth in this entire Agreement, and shall include the following:

**2.1 Duration.** Subject to prior termination pursuant to Section 3.0 hereof, the term of this Agreement shall commence on _____, 2002 and end upon the expiration of twenty-four (24) months (the Contractual Employment Period). Thereafter, Employee's employment with Company shall continue at the will of the Company (the At Will employment Period). The entire period of time in which Employee is employed by Company shall be referred to as the Employment Period.

**2.2 Duties.** During the Employment Period, Employee shall be responsible for, and perform duties associated with, the position of Chief Technology Officer and other duties as may be

03

directed by Company from time to time. Employee shall: (i) devote his full business time during
normal business hours to the business and affairs of the Company; (ii) use his best effors to
promote the interests of the Company; and (iii) perform faithfully and efficiently his
responsibilities.

**2.3 Location of Performance by Employee.** During the Employment Period, Employee shall
perform his duties primarily at the Company's San Diego office, or such other location as may
be reasonably directed or permitted by Company from time to time. Employee acknowledges that
the Company maintains and operates offices in other states, including Illinois and Georgia, and
agrees that, if necessary and in the Company's discretion, he will travel to an out-of-state
location of the Company.

**2.4 Base Salary.** During the Contractual Employment Period, the Company shall pay the
Employee an annual base compensation of One Hundred Seventy-Five Thousand dollars
($175,000.00)(Base Salary) payable in accordance with the Company's normal payroll practices
with such payroll deductions and withholdings as are required by law. During the At Will
Employment Period, Employee's Base Salary may be increased or decreased in the discretion of
the Company at any time.

**2.5 Bonus.** Employee may be entitled to receive, in addition to the annual Base Salary referenced
above, an annual bonus, if any, in an amount to be determined by the Chief Executive Officer in
his sole discretion.

**2.6 Vacation and Holiday Pay.** As of the effective date of this Agreement, Employee will be
entitled to: (i) accrue vacation time at the rate of Three (3) weeks of paid vacation for each year
of employment; and (ii) will be eligible to receive pay for Company-paid holidays. Vacation
time shall accrue ratably each year and, in accordance with the Company's written vacation
policy (which Company reserves the right to withdraw or modify at its discretion), any unused
vacation time shall carry over or forward to the next year, notwithstanding any Company policy
to the contrary. Additionally, employee must wait for 6 months from date of hire before taking
vacation time or obtain consent from the company.

**2.7 Benefits.** Aside from those benefits of employment specifically described in section 2.4, 2.5
and 2.6, Employee shall be entitled to receive such health, dental, personal disability, life
insurance and flexible time-off benefits to the extent provided for other senior executive
employees of the Company with similar duties and work requirements and to the extent as are
authorized and adopted from time to time by the Company.

**2.8 Reimbursement of Expenses.** The Company shall reimburse Employee for all reasonable
and necessary expenses incurred by Employee in connection with his employment, provided that
Employee submits to Company a reimbursement request within 30 days after such expense is
incurred together with presentation of the receipts or substantiation therefor.
**3.0 Termination of Agreement and Employment.**

    **3.1 Termination.** During the Contractual Employment Period, Employee's employment

may be terminated only for cause as the term is defined in Section 3.2. During the At W ll Employment Period, Employee's employment may be terminated at any time for cause or without cause by the Company upon fourteen (14) days written notice to Employee, or by Employee upon fourteen (14) days written notice to Company.

**3.2 Termination for cause.** Employment terminated for cause means (i) a good faith determination by the Company's Board of Directors that Employee willfully failed to follow the lawful written directions of the Board of Directors; provided that no termination for cause shall occur unless Employee has been provided with the Company's notice of intent to terminate employment for cause and Employee has had at least 14 days to cure or correct such behavior, and the Board of Directors has determined that Employee has failed to cure or correct such behavior; (ii) engagement in gross misconduct which is materially detrimental to the Company; provided that no termination for cause shall occur unless Employee has been provided with the Company's notice of intent to terminate employment for Cause and Employee has had at least 14 days to cure or correct such behavior, and the Board of Directors has determined that you failed to cure or correct such behavior; (iii) willful failure or refusal to comply in any material respect with the Company's Proprietary Information and Inventions Agreement, any other written agreement involving the Company and the Employee, or any reasonable policy o'the Company where non-compliance would be materially detrimental to the Company; provided that no termination for cause shall occur unless you have been provided with the Company's notice of intent to terminate your employment for cause and have had at least 14 days to cure or correct such behavior, and the Board of Directors has determined that Employee failed to cure o' correct such behavior; or (iv) commission of an unlawful or criminal act which the Board of Directors reasonably believes would reflect adversely on the Company. A termination of employment by the Company for any other reason, except Disability, or in any other circumstances will be a termination without cause.

**3.3 Death or Disability.** Employee's employment shall be terminable immediately upon Employee's death or disability. Disability is defined for purposes of this subsection as absence from the Company's full time duties with Company as a result of the Employee's incapacity due to physical or mental illness for ninety (90) days calculated on a cumulative basis during any two (2) year period from the first day of the Employee's employment with the Company Nothing in this section is intended to violate any Illinois or federal law regarding parental or family leave policies.

**4.0 Noncompetition.** Employee agrees that during the Employment Period and for a period of eighteen (18) months thereafter, he will not, except in furtherance of his employment with the Company, without the prior written consent of the Company, either directly or indirectly operate, control, advise, be engaged by, perform any consulting services for, invest in (other than less than one percent of the outstanding stock in a publicly held corporation which is listed on the NASDAQ national market or traded over-the-counter or on a recognized securities exchange) or otherwise become associated in any capacity with, any business, company, partnership, organization, proprietorship, or other entity who or which designs, manufactures, markets, sells, maintains and/or services payment technology in competition with the Company in those geographical areas and/or market segments in which the Company conducts or has conducted

such business, or intends to conduct business, consistent with the Company's current, written business plans, during Employee's employment. As consideration for this obligation imposed on Employee, Employer agrees to pay and Employee agrees to accept the lump sum amount of one percent (1%) of Employee's base annual salary at the time of termination, the amount of which shall be paid within 45 days of the date on which Employee's employment with the Company is terminated.

**5.0 Nondisclosure.** Employee agrees at all times to hold as secret and confidential (unless disclosure is required by the Company or would be in furtherance of Employee's employment with the Company or is required pursuant to court order, subpoena in a governmental proceeding, arbitration or pursuant to other process or requirement of law) any and all knowledge, information, developments, source codes, research, customer names, financial data, manufacturing data, trade secrets, know-how and confidences of the Company or its business of which he has knowledge during the Employment Period, to the extent such matters have not previously been made public, are not thereafter made public, or do not otherwise become available to Employee from a third party not, to Employee's best knowledge, bound by any confidentiality agreement with the Company (Confidential Information). Employee acknowledges that this covenant is necessary to protect the Company. The phrase made public as used in this Agreement shall apply to matters within the domain of (a) the general public or (b) the Company's industry. Employee agrees not to use such knowledge for his own benefit or for the benefit of others or, except as provided above, disclose any of such Confidential Information without the prior written consent of the Company, which consent shall make express reference to this Agreement.

**6.0 Miscellaneous Provisions.**

　　**6.1 Notices.** Any notices provided pursuant to this Agreement shall be in writing and shall be deemed given (a) if by hand delivery, upon receipt thereof; (b) if mailed, 5 days after deposit in the U.S. mail, postage paid, certified mail, return receipt requested; (c) if mailed by Express Mail or Federal Express, or other like-carrier, two (2) days after deposit therewith prepaid; or (d) if delivered by fax or e-mail, upon receipt, so long as a hard copy is also delivered by one of the other methods specified herein. Notices shall be delivered to the parties at the following locations:

|  |  |
|---|---|
| Company: | 4Access Communications Corporation |
|  | 1251 West Webster Avenue |
|  | Chicago, Illinois 60614 |
|  |  |
| Employee: | Val Popescu |
|  | 8680 Miralani Drive |
|  | Suite 101 |
|  | San Diego, California 92126 |

　　Each party may change its address for purposes of this section by giving written notice of such change in the manner provided for in this section.

06

**6.2 Amendments.** No term of this Agreement may be amended, waived, discharged or terminated verbally, but only by an instrument in writing signed by the party against which enforcement of the amendment, waiver, discharge or termination is sought.

**6.3 Headings.** The headings in this Agreement are for convenience or reference only and shall not define or limit the provisions hereof.

**6.4 Applicable Law.** This Agreement shall be construed in accordance with and governed by the laws of the State of Illinois.

**6.5 Counterparts.** This Agreement may be executed in several counterparts, each of which shall constitute an original, but all of which together shall constitute but one instrument.

**6.6 Jurisdiction of Courts.** Any judicial proceedings between the parties under this Agreement shall be brought in the Circuit Court of Cook County, Illinois, or the United States District Court for the Northern District of Illinois, Eastern District.

**6.7 Parties of Interest.** All of the terms and covenants contained herein shall inure to the benefit of, and be binding upon the parties hereto, their heirs, successors and/or assigns.

**6.8 Contract Interpretation.** Any dispute resolution ,with respect to interpretation of employment contract, shall result in the assessment of fees and costs in favor of the prevailing party.

**IN WITNESS WHEREOF,** the undersigned have executed this Agreement on the date first written below.

Val Popescu                          4ACCESS COMMUNICATIONS, INC.

_____                     By: _____
                                         President

Dated: 2/27/02                       Dated: 2/27/02

1

## PROOF OF SERVICE
(Pursuant to Federal Law)

2

3

The undersigned certifies and declares as follows:

4

I am a resident of the State of California and over 18 years of age and am not a party to this action. My business address is 555 South Flower Street, 31st Floor, Los Angeles, California 90071-2300, which is located in the county where any non-personal service described below took place.

5

6

On April 25, 2008, a copy of the following document(s):

7

**DECLARATION OF STEVEN D. DAVIS IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE**

8

9

was served on:

10

Gregory P. Goonan, Esq.
The Affinity Law Group APC

11

600 West Broadway, Suite 400
San Diego, California 92101-3352

12

Telephone:  (619) 446-5661
Facsimile:  (619) 515-1197

13

ggoonan@affinity-law.com

14

15

Service was accomplished as follows.

16

☐     **By U.S. Mail.** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice the mail would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

17

18

19

20

☐     **By personal delivery by Beverly Hills Express Attorney Services** of the document(s) listed above to the person(s) at the address(es) set forth above.

21

22

☒     **By Electronic Means.** On the above date, I filed the above-mentioned document(s) by electronic means with the Court. As such, the Court electronically mailed such document(s) to the parties noted above, whose electronic mail address is set forth above.

23

24

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on April 25, 2008, at Los Angeles, California.

25

26

s/Jeffrey S. Renzi

27

_____
Jeffrey S. Renzi

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
555 South Flower Street, 31st Floor
Los Angeles, CA 90071-2300

LOSANGELES/262037.1

PROOF OF SERVICE

1  Douglas J. Rovens (State Bar # 106582)
   *drovens@ssd.com*
2  Jeffrey S. Renzi (State Bar # 221963)
   *jrenzi@ssd.com*
3  SQUIRE, SANDERS & DEMPSEY L.L.P.
   555 S. Flower St., 31st Floor
4  Los Angeles, CA 90071
   Telephone:    (213) 624-2500
5  Facsimile:    (213) 623-4581

6  Attorneys for Defendant
   4ACCESS COMMUNICATIONS COMPANY
7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  VAL POPESCU, an individual;          | **Case No.  3:08 CV 00525 JM RBB**

12              Plaintiff,               | **REQUEST FOR JUDICIAL NOTICE**

13       vs.                             | *[Notice of Motion and Motion and
                                         | Memorandum of Points and Authorities and
14  4ACCESS COMMUNICATIONS                | Declaration of Steven D. Davis filed and
    COMPANY, a Delaware corporation, and  | [Proposed] Order lodged concurrently
15  DOES 1 through 10, inclusive,         | herewith]*

16              Defendants.              | The Honorable Jeffrey T. Miller

17                                       | Date:      May 30, 2008
                                         | Time:      1:30 p.m.
18                                       | Place:     Courtroom 16

19

20

21

22

23

24

25

26

27

28

**TO THE COURT AND ALL INTERESTED PARTIES:**

Defendant 4Access Communications Company ("4Access") hereby requests that the Court take judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, of the following documents:

1.    The Complaint in <u>Val Popescu, etc. v. 4Access Communications, Inc., etc.,</u> California Superior Court, County of San Diego, Case No. GIN056734, filed on or about November 2, 2006, removed to the United States District Court for the Southern District of California, Case No. 07 CV 00063 JM RBB, on or about January 10, 2007, attached hereto as Exhibit "A."

2.    Order of Judge Jeffrey T. Miller dismissing <u>Val Popescu, etc. v. 4Access Communications, Inc., etc.,</u> United States District Court for the Southern District of California, Case No. 07 CV 00063 JM RBB, attached hereto as Exhibit "B."


Dated: April 25, 2008                          SQUIRE, SANDERS & DEMPSEY L.L.P.


                                               By:_____s/ Jeffrey S. Renzi_____
                                                         Douglas J. Rovens
                                                         Jeffrey S. Renzi
                                               Attorneys for Defendant
                                               4ACCESS COMMUNICATIONS COMPANY

# EXHIBIT A

E/E32000/19739

<table>
<tr><td>1</td><td>Lawrence W. Horwitz (SBN 122640)<br>Bernard C. Jasper (SBN 118479)</td></tr>
<tr><td>2</td><td>HORWITZ, CRON & JASPER</td></tr>
<tr><td>3</td><td>Four Venture, Suite 390<br>Irvine, CA 92618</td></tr>
<tr><td>4</td><td>Phone:  (949) 450-4942/Facsimile:  (949) 453-8774<br>bjasper@hclaw.biz</td></tr>
<tr><td>5</td><td>Attorney for Plaintiff VAL PROPESCU</td></tr>
</table>

6

7

8                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                 **COUNTY OF SAN DIEGO – NORTH COUNTY DIVISION**

10

11   VAL PROPESCU, an individual,                 Case No.:  **G I N 0 5 6 7 3 4**

12                         Plaintiff,              **COMPLAINT FOR:**
                                                   **1.  WAGES EARNED;**
3                          vs.                     **2.  BREACH OF CONTRACT; and**
                                                   **3.  OPEN BOOK ACCOUNT.**
4    4ACCESS COMMUNICATIONS, INC.,
     a corporation, and DOES 1 through 10,         **(Amount demanded exceeds $25,000)**
5    inclusive,

6                         Defendants.              **BY FAX**

7    ────────────────────────────────────

8           Plaintiff VAL PROPESCU complains against Defendant 4ACCESS COMMUNICATIONS,

19   INC., a corporation of unknown origin ("4ACCESS") and DOES 1-10, and each of them, as follows:

20                              **JURISDICTION AND VENUE**

21          1.      Plaintiff VAL PROPESCU is an individual residing in the city of Del Mar, in San

22   Diego County, California.

23          2.      Defendant 4ACCESS is a corporation of unknown origination with its principal place

24   of business located in San Diego, California.

25          3.      The true names and capacities, whether individual, corporate, associate, or otherwise;

26   of DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiff who therefore sues

27   these Defendants by such fictitious names.  Plaintiff asserts that each of the Defendants designated

28   herein as a DOE is responsible in some manner for the events and happenings referred to herein and

                                               -1-

     ──────────────────────────────────────────────────────────────
     COMPLAINT FOR:  WAGES EARNED; BREACH OF CONTRACT; and OPEN BOOK ACCOUNT

1   caused injuries and damages proximately thereby and thereto to Plaintiff, who therefore sues

2   Defendants by such fictitious names. Plaintiff will seek leave of court to amend this Complaint to

3   allege the true names and capacities of the DOES when the same have been ascertained.

4       9.      Plaintiff is informed and believes, and upon such information and belief alleges, that at

5   all times relevant to this action, each of the Defendants, including Does 1 through 10, inclusive, were

6   responsible in some manner for the acts and omissions alleged in this complaint, and that Plaintiff's

7   damages, both existing and prospective, are, were and will be proximately caused by the acts and

8   omissions of the defendants, including Does 1 through 10, inclusive.

9       10.     Plaintiff is informed and believes, and upon such information and belief alleges, that

10  Defendants, and each of them, including Does 1 through 10, inclusive, are and were at all relevant

11  times the agents, servants, employees, partners, joint venturers, subsidiaries, parent corporations, and

12  successors-in-interest of each of the remaining Defendants, and were acting within the course, scope

3   and purpose of such agency, employment, partnership, joint venture, or relationship.

4       11.     There exists, and at all times herein mentioned there existed, a unity of interest in

5   ownership between Defendant DOES 1-5 on the one hand and Defendant 4ACCESS on the other

6   hand, such that any individuality and separateness between Defendants DOES 1-5 and 4ACCESS has

7   ceased. Defendant 4ACCESS is thereby the alter ego of Defendant DOES 1-5 such that Defendant

8   4ACCESS is and at all times herein mentioned was a mere shell, instrumentality, and conduit through

19  which Defendants DOES 1-5 carried on business in a corporate name. Defendants DOES 1-5

20  exercised complete control and dominance of Defendant 4ACCESS to such an extent that any

21  individuality or separateness of Defendant 4ACCESS from Defendant DOES 1-5 does not and at all

22  times herein mentioned did not exist.

23      12.     Adherence to the fiction of the separate existence of Defendant 4ACCESS as an entity

24  distinct from Defendants DOES 1-5 would permit an abuse of the corporate privilege and produce an

25  inequitable result in that Defendants DOES 1-5 manipulated the assets of Defendant 4ACCESS for

26  their personal benefit and used Defendant 4ACCESS as a shield from any responsibility or liability.

27  Defendants DOES 1-5 acted in illicit manners under the purported shield of corporate officers for

28  Defendants DOES 1-5 with the intent to prevent Plaintiff from recovering the wages earned.

-2-

04

13.     After causing Plaintiff to accept a position of employment with Defendant 4ACCESS, Defendants DOES 1-5 conspired to manipulate and to coerce the corporate operations and profits of Defendant 4ACCESS such that Plaintiff could never recover the wages earned during his employment with Defendant 4ACCESS by reason of Defendants' efforts to disguise the corporate operations and hide profits and cash flow from Plaintiff by DOES 1-5, who also acted as corporate officers, directors and/or fiduciaries.

### GENERAL ALLEGATIONS

14.     Beginning March 2, 2002, Plaintiff VAL PROPESCU was employed under an oral agreement as a wage and hour employee by Defendant 4ACCESS to work with and improve the efficiency of Defendant's operation in the intellectual property licensed from a third party.  In accordance with his employment, Plaintiff performed the services required by Defendant 4ACCESS related to the operation and use of the intellectual property.

15.     Defendant 4ACCESS required Plaintiff work on the hours set by Defendant and required that Plaintiff work from Defendant's place of business and honor Defendant's purported ownership and control over the licensed intellectual property.

16.     Defendant 4ACCESS failed to pay Plaintiff the wages earned, or any amount at all, though Plaintiff made demand on Defendants for payment in accordance with the employment agreement.

17.     Plaintiff is presently owed back wages in an amount in excess of $105,000, subject to proof at trial.

### FIRST CAUSE OF ACTION

#### (For Labor Supplied Against All Defendants)

18.     Plaintiff realleges herein by this reference each and every allegation contained in paragraphs 1 through 17, inclusive, of this Complaint as if fully set forth herein.

19.     Within four years past, prior to the commencement of this action, Defendants became indebted to Plaintiff for *$105,541.07* in wages earned from Defendant 4ACCESS.

20.     Neither the whole nor any part of the above amount has been paid, although demand has been made. Therefore, there is now due and owing from Defendants to Plaintiff the amount of

-3-

05

$105,541.07, which amount shall be proven at trial, along with prejudgment interest at the legal rate thereon from the date these wages were earned.

## SECOND CAUSE OF ACTION

### (For Breach of Contract Against All Defendants)

21.    Plaintiff realleges herein by this reference each and every allegation in paragraphs 1 through 20, inclusive, of this Complaint as if fully set forth herein.

22.    Defendant contracted with Plaintiff for Plaintiff to serve as a wage and hour employee for Defendant 4ACCESS (the "Employment Agreement").

23.    Plaintiff has at all times performed all work and honored his employment duties and obligations under the terms of the Employment Agreement in the manner specified by the employee handbook, if any, and the Employment Agreement, except those that have been excused.

24.    Defendants, and each of them, received the benefit of Plaintiff's employment and work, and have failed and refused, and continue to refuse to pay Plaintiff the wages due, as a result of which Plaintiff has suffered damages in the amount in excess of the minimum jurisdiction of this Court, plus interest at the contract rate, all to be proved at trial.

25.    Plaintiff also demands the rights and benefits accruing under the <u>California Labor Code</u> for the failure to pay wages, including the recovery of attorney fees and costs, and Plaintiff retained Horwitz, Cron & Jasper to bring this action and enforce its rights under the Agreement.

**WHEREFORE**, Plaintiff VAL PROPESCU demands judgment against Defendants 4ACCESS COMMUNICATIONS, INC. and DOES 1 through 10, jointly and severally, for the following:

## FIRST CAUSE OF ACTION

1.    For damages in an amount of *$105,541.07,* to be proven at trial.

2.    For pre-judgment interest at the legal rate;

3.    For cost of suit; and

4.    For such further relief as the Court may deem proper.

///

///

-4-

COMPLAINT FOR: WAGES EARNED; BREACH OF CONTRACT; and OPEN BOOK ACCOUNT

## SECOND CAUSE OF ACTION

5.     For damages in an amount in excess of $105,541.07, to be proven at trial.

6.     For pre-judgment interest at the legal rate;

7.     For benefits and penalties accruing to Plaintiff under the <u>Labor Code</u> for failure to pay wages earned, including for the recovery of attorney fees and cost of suit; and

8.     For such further relief as the Court may deem proper.

Dated: October 30, 2006

HORWITZ, CRON & JASPER

By: _____
        Bernard C. Jasper
Attorneys for Plaintiff VAL PROPESCU

-5-

COMPLAINT FOR:  WAGES EARNED; BREACH OF CONTRACT; and OPEN BOOK ACCOUNT

07

# EXHIBIT B

LEXSEE 2007 U.S. DIST. LEXIS 21822

VAL POPESCU, an individual, Plaintiff, vs. 4ACCESS COMMUNICATIONS, INC.,
a corporation, and DOES 1 through 10, inclusive, Defendants.

CASE NO. 07-CV-0063 JM (AJB) [Related Case No. 06cv2709]

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
CALIFORNIA

2007 U.S. Dist. LEXIS 21822

March 23, 2007, Decided
March 26, 2007, Filed

COUNSEL: [*1] For Val Popescu, an individual, Plaintiff: William L Miltner, LEAD ATTORNEY, Miltner Law Group, San Diego, CA.

For 4Access Communications, a Delaware corporation, Defendant: Lauren E Godshall, Zelle Hofmann Voelbel Mason and Gette, Los Angeles, CA US.

JUDGES: Jeffrey T. Miller, United States District Judge.

OPINION BY: Jeffrey T. Miller

OPINION

ORDER GRANTING MOTION TO DISMISS FOR IMPROPER VENUE

[Docket No. 16]

I. *INTRODUCTION*

This is a breach of contract action for back wages owed, removed to this court on the basis of diversity jurisdiction. Presently before the court is defendant 4Access Communications' ("Defendant") *Rule 12(b)(3)* motion to dismiss for improper venue based on a forum selection clause in Plaintiff's employment contract (the "Contract"). Plaintiff opposes the motion. The court held a hearing on the matter on March 23, 2007. After considering the parties' papers and the authorities cited therein, as well as the oral argument of counsel, the court hereby **GRANTS** the motion for the following reasons.

II. *BACKGROUND*

In February 2002, Defendant hired Plaintiff as Defendant's Chief Technology Officer pursuant to the Contract. Davis [*2] Decl., Ex. A (copy of contract). The Contract provided that "[a]ny judicial proceedings between the parties under this Agreement shall be brought in the Circuit Court of Cook County, Illinois, or the United States District Court for the Northern District of Illinois, Eastern District." *Id.* P 6.2 (the "forum selection clause"). The Contract further provided that

the term of this Agreement shall commence on    , 2002 and end upon the expiration of twenty-four (24) months (the Contractual Employment Period). Thereafter, Employee's employment with Company shall continue at the will of the Company (the At Will employment Period). The entire period of time in which Employee is employed by Company shall be referred to as the Employment Period.

*Id.* P 2.1.

Plaintiff's employment lasted from about February 2002 until January 2007, at which point Defendant terminated him. Plaintiff filed his complaint in state court on November 2, 2006. On January 10, 2007, Defendant removed the suit to this court.

Defendant now moves to dismiss on the ground that venue is proper only in Illinois pursuant to the Contract's forum selection clause. Plaintiff argues that although [*3] Illinois may be the proper venue for wages owed during the two-year "Contractual Employment Period", the forum selection clause does not govern the "At Will Employment Period" from about February 2004 to January 2007.

## III. DISCUSSION

Rule 12(b)(3) is the proper vehicle for moving to dismiss pursuant to a forum selection clause. *Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996)*. When ruling on a *12(b)(3)* motion, the court does not accept the allegations as true and may consider matters outside the pleadings. *Id.*

Federal law governs the enforceability of forum selection clauses. *Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 513 (9th Cir.1988)*. Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *M/S Bremen v. Zapata Off-shore Co., 407 U.S. 1, 10, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972)* (internal quotations omitted) (enforcing parties' choice to litigate disputes in London, England); *see also Pelleport Investors, Inc. v. Budco Quality Theatres, 741 F.2d 273, 279 (9th Cir. 1984)* (applying [*4] *Bremen* rule to domestic forum selection questions). The presence of fraud, undue influence, "overweening bargaining power", or serious inconvenience to the parties makes enforcement of a forum selection clause unreasonable. *Bremen, 407 U.S. at 12-13, 16-17; Docksider, Ltd v. Sea Technology, Ltd., 875 F.2d 762, 763 (9th Cir. 1989)*. The party resisting dismissal must meet a "'heavy burden of proof' . . . to set aside the clause on grounds of inconvenience." *Carnival Cruise Lines v. Shute, 499 U.S. 585, 595, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1990)* (quoting *Bremen, 407 U.S. at 17*).

Both contract and tort claims may be subject to forum selection clauses, and "[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." *Manetti-Farrow, 858 F.2d at 514; see also Bender Shipbuilding & Repair Co., Inc. v. The Vessel Drive Ocean V, 123 F.Supp.2d 1201, 1207 (S.D. Cal. 1988)* (same), *aff'd sub nom. Odin Shipping Ltd. v. Drive Ocean V MV, 221 F.3d 1348 (9th Cir. 2000)* (unpublished).

The court finds that resolution of Plaintiff's [*5] claim for wages owed during the at-will employment period "relates to interpretation of the contract."

*Manetti-Farrow, 858 F.2d at 514*. Any determination of whether such wages are due "cannot be adjudicated without analyzing whether the parties were in compliance with the contract." *Id.* At the heart of this case is the employment relationship between the parties, a relationship that flows from the Contract. Therefore, the forum selection clause must be enforced with respect to the entirety of Plaintiff's claim. [1]

> 1   Although at the hearing Plaintiff offered to waive his Contractual Employment Period damages in an amended pleading, the court would still consider the clause to apply. If tort claims flowing out of a contractual relationship may be subject to forum selection clauses, *Manetti-Farrow, 858 F.2d at 514*, then at-will employment damages growing out of the initial Contractual Employment Period would likewise be subject to the clause in this case.

Nor has Plaintiff [*6] set forth any argument as to why the forum selection clause should be disregarded for fraud, undue influence, or overweening bargaining power. *Bremen, 407 U.S. at 12-13, 16-17*. As to inconvenience, Plaintiff points out that Illinois is 2,000 miles away but does not provide specific reasons why this distance would cause inconvenience. Moreover, the fact of distance alone rarely satisfies the resisting party's heavy burden to prove inconvenience. *See, e.g., Spradlin v. Lear Siegler Management Servs. Co., 926 F.2d 865, 869 (9th Cir. 1991)* (finding that trial court did not abuse its discretion by enforcing employment contract's forum selection clause providing that all disputes would be litigated in Saudi Arabia, even when plaintiff resided in California).

## IV. CONCLUSION

The motion is **GRANTED.** This action is **DISMISSED** for improper venue.

IT IS SO ORDERED.

DATED: March 23, 2007

Hon. Jeffrey T. Miller

United States District Judge

**PROOF OF SERVICE**

(Pursuant to Federal Law)

The undersigned certifies and declares as follows:

I am a resident of the State of California and over 18 years of age and am not a party to this action. My business address is 555 South Flower Street, 31st Floor, Los Angeles, California 90071-2300, which is located in the county where any non-personal service described below took place.

On April 25, 2008, a copy of the following document(s):

**REQUEST FOR JUDICIAL NOTICE**

was served on:

Gregory P. Goonan, Esq.
The Affinity Law Group APC
600 West Broadway, Suite 400
San Diego, California 92101-3352
Telephone: (619) 446-5661
Facsimile: (619) 515-1197
ggoonan@affinity-law.com

Service was accomplished as follows.

☐   **By U.S. Mail.** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice the mail would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid of postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒   **By Electronic Means.** On the above date, I filed the above-mentioned document(s) by electronic means with the Court. As such, the Court electronically mailed such document(s) to the parties noted above, whose electronic mail address is set forth above.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on April 25, 2008, at Los Angeles, California.

s/Jeffrey S. Renzi

_____
Jeffrey S. Renzi