1

Gregory P. Goonan (Cal. Bar #119821)
**The Affinity Law Group APC**
600 West Broadway, Suite 400
San Diego, CA  92101
Tel:  619-702-4335
Fax:  619-243-0088
E-mail: ggoonan@affinity-law.com

2

3

4

5

Attorneys for Plaintiff
VAL POPESCU

6

7

8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11

VAL POPESCU, an individual;

              Plaintiff,

12

        vs.

13

4ACCESS COMMUNICATIONS
COMPANY, a Delaware corporation, and
DOES 1 through 10, Inclusive

14

15

              Defendants.

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.  08 CV 525 JM (RBB)

**PLAINTIFF'S MEMORANDUM OF
POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR IMPROPER
VENUE**

Hearing Date:  May 30, 2008
Time:  1:30 p.m.
Court:  16 (Hon. Jeffrey T. Miller)

**ORAL ARGUMENT REQUESTED**

1

# **Table of Contents**

2

3

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

4

5

I.      PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

6

7

8

II.     THE PRESENT MOTION SHOULD BE DENIED IN ITS ENTIRETY
BECAUSE NONE OF THE CAUSES OF ACTION IN PLAINTIFF'S
FIRST AMENDED COMPLAINT ARE SUBJECT TO THE FORUM
SELECTION CLAUSE IN THE EMPLOYMENT CONTRACT . . . . . . . . . . . . . . . . . . . 6

9

10

11

      A.     The Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

12

      B.     The Wage Claims Are Not Barred By The Forum Selection
Clause Because It Is Not Necessary To Interpret The
Employment Contract To Resolve Such Claims . . . . . . . . . . . . . . . . . . . . . . . 7

13

14

      C.     The California Labor Code Claim Is Not Barred By The
Forum Selection Clause Because It Is Not Necessary To
Interpret The Employment Contract To Resolve Such Claim . . . . . . . . . . . . . . . 11

15

16

      D.     The Wrongful Discharge Claim Is Not Barred By The
Forum Selection Clause Because It Is Not Necessary To
Interpret The Employment Contract To Resolve Such Claim . . . . . . . . . . . . . . . 12

17

18

      E.     The Stock Options Claim Is Not Barred By The Forum
Selection Clause Because It Is Not Necessary To Interpret
The Employment Contract To Resolve Such Claim . . . . . . . . . . . . . . . . . . . 14

19

20

21

22

III.    IF THE COURT DETERMINES THAT ANY OF THE CLAIMS IN
THE FIRST AMENDED COMPLAINT ARE SUBJECT TO THE
FORUM SELECTION CLAUSE, PLAINTIFF REQUESTS TRANSFER
RATHER THAN DISMISSAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

23

24

25

26

27

28

1

## **Table of Authorities**

2  Cases:

3  *Gantt v. Sentry Insurance*, 1 Cal.4th 1083 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

4  *Gould v. Maryland Sound Industries, Inc.*, 31 Cal.App.4th 1137 (1995) . . . . . . . . . . . . . . . 13

5

6  *Manetti-Farrow v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988) . . . . . . . . . . . . *passim*

7  *Rothstein v. Carriere*, 41 F.Supp.2d 381 (E.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 4

8  *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

9

10

11  Statutes:

12  28 U.S.C. § 1391(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

13  28 U.S.C. § 1391(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

14  28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 17

15  28 U.S.C. § 1406(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 17

16

17  Cal. Labor Code § 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18  Cal. Labor Code § 201(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

19  Cal. Labor Code § 203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

20  Cal. Labor Code § 218.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

21  Cal. Labor Code § 218.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

22

23

24

25

26

27

28

Plaintiff Val Popescu ("Plaintiff") hereby submits the following memorandum of points and authorities in opposition to the motion to dismiss for improper venue filed by defendant 4Access Communications Company ("4Access").

## I.    PRELIMINARY STATEMENT

Plaintiff's operative complaint in this matter is the first amended complaint. Plaintiff's first amended complaint sets forth the following causes of action: (1) Breach of Contract – Unpaid Wages; (2) Labor Supplied; (3) Violation of California Labor Code section 201 et seq. – Failure to Pay Wages; (4) Wrongful Discharge in Violation of Public Policy; and (5) Breach of Contract – Stock Options. As can be seen, Plaintiff's claims can be grouped into four separate categories: the Wage Claims (Causes of Action Nos. 1 and 2); the California Labor Code Claim (Cause of Action No. 3); the Wrongful Discharge Claim (Cause of Action No. 4); and the Stock Option Claim (Cause of Action No. 5).

By the present motion, 4Access seeks dismissal of all of the causes of action in the first amended complaint on the ground that venue is not proper in this judicial district. As the Court is aware, the analysis of whether venue is proper in this judicial district must be done separately as to each cause of action alleged in Plaintiff's first amended complaint.[1] Unfortunately, 4Access has not employed such claim-specific analysis by this motion. Instead, 4Access adopts a shotgun approach, and appears to seek dismissal of all of Plaintiff's causes of action on two grounds: (1) the forum selection clause in the written contract (the "Employment Contract") that was in place for two years of Plaintiff's employment; and (2) this Court's order interpreting the forum selection clause in the Employment Contract in prior litigation between Plaintiff and 4Access (referred to in 4Access' motion as "*Popescu I*").

---

[1]    *See*, *e.g.*, *Rothstein v. Carriere*, 41 F.Supp.2d 381, 386 (E.D.N.Y. 1999).

1

2          As will be discussed herein, neither the forum selection clause in the Employment Contract

3   nor the Court's order in the *Popescu I* litigation support dismissing any of Plaintiff's claims for

4   improper venue, much less all of the claims as requested by 4Access.[2]  As the Court knows, the a

5   forum selection clause in a written contract will also apply to claims other than claims for breach

6   of the written contract only when it is necessary to interpret the written contract to decide the non-

7   contract claims.  As shown below, that is not the case here.  Plaintiff's Wage Claims and

8   California Labor Code Claim only require a determination whether the amount of compensation

9   4Access promised to pay Plaintiff pursuant to an employment offer letter (the "Employment

10  Letter") signed <u>before the Employment Contract</u> in fact has been paid.[3]  Determination of

11  Plaintiff's Wrongful Discharge Claim likewise does not require any interpretation of the

12  Employment Contract, but rather will focus on 4Access' motivation for terminating Plaintiff.[4]

13  And Plaintiff's Stock Option Claim has absolutely nothing at all to do with the Employment

14  Contract, but rather is based on written stock options that 4Access issued to Plaintiff.[5]

15          The Court's Order in *Popescu I* also does not require dismissal of any of Plaintiff's claims

16  for improper venue.  Because the focus of *Popescu I* was the Employment Contract, the Court

17  never was advised about the existence of, nor briefed about the significance of, the Employment

18

19

20  ---

[2]   The forum selection clause in the Employment Contract expressly applies to judicial proceedings between the parties brought "under" the Employment Contract.  Plaintiff disputes that any of his claims in the first amended complaint have been brought "under" the Employment Agreement.

21

22  [3]   A true and correct copy of the Employment Letter is submitted herewith as Exhibit 1.  As the Court will see when it reviews Exhibit 1, the entire employment relationship between Plaintiff and 4Access flows from such initial Employment Letter.

23

24  [4]   Indeed, it is difficult to understand how an interpretation of the Employment Contract would be required for resolution of Plaintiff's California Labor Code Claim and Wrongful Discharge Claim given that the Employment Contract provides that it is to be interpreted under Illinois law.  In sharp contrast, the California Labor Code Claim and the Wrongful Discharge Claim must be determined by application of California law and implicate the fundamental public policies of the State of California (which should, indeed must, be applied by a California jury).

25

26

27  [5]   True and correct copies of the stock options issued by 4Access to Plaintiff are submitted herewith as Exhibit 2.

28

---

***PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S***
***MOTION TO DISMISS FOR IMPROPER VENUE***

- 5 -

Letter – which, as discussed herein, is the document (not the Employment Contract) that needs to be interpreted to resolve the Wage Claims.  Moreover, the Court's order in *Popescu I* never addressed whether Plaintiff's California Labor Code Claim, Wrongful Discharge Claim or Stock Option Claim somehow are subject to the forum selection clause in the Employment Contract (which they are not) because such claims were not even asserted by Plaintiff in *Popescu I*.

Simply stated, none of the claims asserted by Plaintiff in his first amended complaint in this case are subject to the forum selection clause in the Employment Contract.  Because 4Access was doing business in this judicial district at all relevant times, venue otherwise is proper in this judicial district for all of Plaintiff's claims.  Consequently, the present motion to dismiss for improper venue by 4Access should be denied in its entirety.[6]

## II.    THE PRESENT MOTION SHOULD BE DENIED IN ITS ENTIRETY BECAUSE NONE OF THE CAUSES OF ACTION IN PLAINTIFF'S FIRST AMENDED COMPLAINT ARE SUBJECT TO THE FORUM SELECTION CLAUSE IN THE EMPLOYMENT CONTRACT

### A.    The Governing Law

All of the claims in Plaintiff's first amended complaint are state law claims that Plaintiff initially filed in California Superior Court.  4Access removed Plaintiff's state court action on the basis of diversity of citizenship.  In a diversity case like this one, venue is proper in any judicial district where the defendant resides and any judicial district where a substantial part of the events and omissions giving rise to the lawsuit occurred.  [28 U.S.C. § 1391(a).]  Where, as here, the defendant is a corporation, it is subject to venue in any place where it is subject to personal

---

[6]  If the Court determines that any of the claims in Plaintiff's first amended complaint is subject to the forum selection clause in the Employment Contract, Plaintiff respectfully asks that the Court transfer such claims to the United States District Court for the Northern District of Illinois, Eastern Division in accordance with 28 U.S.C. § 1404(a) and/or 28 U.S.C. § 1406(a), and retain all other claims in this judicial district for litigation.

jurisdiction.  [28 U.S.C. § 1391(c).]  Because 4Access employed Plaintiff in this judicial district at all relevant times, terminated Plaintiff in this judicial district, issued the stock options at issue in this lawsuit in this judicial district and otherwise did business in this judicial district at all relevant times, 4Access is subject to venue in this judicial district for all of Plaintiff's claims.  [_Ibid_; First Amended Complaint ¶ 10; Declaration of Val Popescu (submitted herewith under separate cover) ¶¶ 3-4.]

4Access attempts to overcome the fact that it undisputedly is subject to venue in this judicial district by asserting the forum selection clause which is set forth at Paragraph 6.6 of the Employment Contract.  In the Ninth Circuit, federal law governs the effect of a forum selection clause like the one set forth at Paragraph 6.6 of the Employment Contract.  Obviously, a forum selection clause in a written contract will apply to a claim for breach of the written contract itself.  But in _Manetti-Farrow v. Gucci America, Inc._, 858 F.2d 509 (9th Cir. 1988), the Ninth Circuit held that a forum selection clause in a written contract also could apply to claims other than a claim for breach of the written contract containing the forum selection clause.  The critical test is whether resolution of the non-contract claims requires an interpretation of the written contract.  [_Manetti-Farrow_, 858 F.2d at 514.]

As discussed below, it is not necessary for the trier of fact here to interpret the Employment Contract to determine any of the claims in Plaintiff's first amended complaint.  Consequently, the present motion must be denied in its entirety.

B.      The Wage Claims Are Not Barred By The Forum Selection Clause Because It Is Not Necessary To Interpret The Employment Contract To Resolve Such Claims

The first cause of action in Plaintiff's first amended complaint is for breach of the at will employment contract between Plaintiff and 4Access, and the second cause of action in the first amended complaint is a common count for labor supplied.  Both of these causes of action seek to

1   recover compensation that Plaintiff alleges 4Access owes him for the period from March 1, 2004

2   (the end of the term of the written Employment Contract) through the date of his termination on

3   January 10, 2007.

4          As alleged in the first amended complaint, neither the first cause of action nor the second

5   cause of action deals at all with the reasons for Plaintiff's termination.  On the contrary, regardless

6   of why 4Access terminated Plaintiff's employment, 4Access was obligated to pay Plaintiff all

7   compensation which he was due for the period from March 1, 2004 through January 10, 2007.

8   Consequently, there are two issues – and only two issues – that are relevant to the determination of

9   Plaintiff's first cause of action and second cause of action: (1) how much was Plaintiff supposed to

10  be paid during the relevant period; and (2) how much was Plaintiff actually paid during the

11  relevant period.  The difference between these two amounts will be Plaintiff's damages on the first

12  cause of action and second cause of action.

13         As discussed above, since neither the first cause of action nor the second cause of action is

14  a claim for breach of the written Employment Contract itself, the forum selection clause can and

15  will only support dismissal of the first and second cause of actions is the Court must "interpret"

16  the written Employment Contract in order to resolve the first cause of action or the second the

17  cause of action.  [See Manetti-Farrow, 858 F.2d at 514.]  That is not the case here.[7]

18         The Court obviously does not have to interpret the Employment Contract to determine how

19  much 4Access actually paid Plaintiff during the period at issue.  The calculation of such amount is

_____

[7]   The Manetti-Farrow case addressed the question whether a forum selection clause in a written
contract also would apply to tort claims between the parties.  The Ninth Circuit found that the
contractual forum selection clause did apply to the tort claims because the tort claims "[could not]
be adjudicated without analyzing whether the parties were in compliance with the contract."  [858
F.2d at 514.]  The instant case presents a far different situation.  Here, the Court does not need
to determine whether Plaintiff was in compliance with the Employment Contract to adjudicate the
Wage Claims – as noted, regardless of whether Plaintiff was in compliance with the Employment
Contract, he still was entitled to be paid for the work he performed for 4Access during the relevant
period.  Consequently, "contract performance" is not an issue with respect to the Wage Claims.

_____

*PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S*
*MOTION TO DISMISS FOR IMPROPER VENUE*

1   purely an accounting function that will be performed by reference to 4Access' payroll and

2   accounting records.

3        Likewise, the Court does not have to interpret the written Employment Contract to

4   determine how much Plaintiff was supposed to be paid during the relevant period.  As Plaintiff

5   explains in his declaration filed herewith under separate cover, the amount of his compensation

6   was not established by the Employment Contract.  On the contrary, prior to the date the parties

7   even signed the Employment Contract, 4Access provided Plaintiff with a written employment

8   offer (the "Employment Letter") that was accepted by Plaintiff days before the Employment

9   

10  Contract was signed.  [Declaration of Val Popescu ¶ 5 and Exhibit 1 to the Popescu Declaration.]

11       A true and correct copy of the Employment Letter is submitted herewith as Exhibit 1.  Of

12  critical importance to the present motion, it is the Employment Letter – not the Employment

13  Contract – that in the first instance established Plaintiff's compensation rate as $175,000.00 per

14  year.  Consequently, to resolve the Wage Claims, the Court will not interpret the Employment

15  

16  Contract – instead, the Court will look to the Employment Letter (which does not contain any type

17  of forum selection clause) to determine Plaintiff's compensation rate.[8]

18       Because the Court does not need to interpret the Employment Agreement in connection

19  with the litigation and resolution of the Wage Claims, but instead will rely upon the Employment

20  

21  Letter as the first written document to establish Plaintiff's rate of compensation, the analysis set

22  forth by the Ninth Circuit in the _Manetti-Farrow_ decision does not apply here.[9]  Consequently, the

23  

24  ───────────────────

[8]   Critically, 4Access' moving papers do not specify exactly which provisions of the Employment Contract the Court supposedly must interpret to resolve Plaintiff's Wage Claims.

25  

26  [9]   At page 3 of its order dismissing _Popescu I_, the Court opined that the forum selection clause applied to Plaintiff's claim for wages owed during the at will employment period because "[a]t the heart of this case is the employment relationship between the parties, a relationship that flows from the [Employment] Contract."  As the Court has seen from the Employment Letter submitted as Exhibit 1, that in fact is not the case here – the employment relationship instead flows from the Employment Letter, which is the first document memorializing the employment relationship between the parties.  But in any event, Plaintiff respectfully submits that the fact that he parties'

27  

28  

───────────────────

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE**

1  forum selection clause in the Employment Contract does not support dismissal of Plaintiff's wage

2  claims on venue grounds.

3        The Court's order in *Popescu I* does not compel a different conclusion nor support

4  dismissal of the Wage Claims pursuant to the forum selection clause.  While it is true that the

5  Court, at page 3 and footnote 1 on page 3 of the order dismissing *Popescu I*, found that any claims

6

7  for wages due during the at-will period required interpretation of the Employment Contract and

8  analysis of whether Plaintiff was in compliance with the Employment Contract, the Court reached

9  such conclusion without having been advised of the existence of the Employment Letter (which

10  was not brought to the Court's attention because the focus of *Popescu I* was different than the

11  present case).

12        Moreover, the Court reached its conclusion in *Popescu I* about the applicability of the

13  forum selection clause to the at-will period without the benefit of briefing from the parties about

14

15  how and why Plaintiff's entitlement to wages during the at-will period might require (or not

16  require) interpretation of the Employment Contract.  Critically, the Court's order dismissing

17  *Popescu I* does not explain how or why an employee's entitlement to wages that were due and

18  payable prior to termination can in any way be dependent on whether the employee was in

19  compliance with his or her employment contract.

20        Indeed, if compliance with an employment contract were a prerequisite to the collection of

21  wages for services performed prior to termination, no employee who was terminated for cause or

22  for doing a bad job would ever be entitled to receive his or her final paycheck upon termination.

23

24

25  _____

26  employment relationship may have flowed from the Employment Contract is not enough, by itself, to extend the reach of the forum selection clause pursuant to <u>Manetti-Farrow</u>.  On the contrary, in order for <u>Manetti-Farrow</u> to apply to extend the forum selection clause to claims not specifically brought under the Employment Contract, the Court must be required to <u>interpret</u> the Employment Contract to resolve such claims.

27

28

Plaintiff does not believe that is the law, and has not been able to find any cases to support such proposition.[10]

For the foregoing reasons, Plaintiff respectfully submits that the Court's order dismissing *Popescu I* is not determinative of this motion and does not compel dismissal of Plaintiff's Wage Claims. Instead, because 4Access was obligated to pay Plaintiff all unpaid wages immediately upon termination without regard to compliance with the Employment Contract, interpretation of the Employment Contract is <u>not</u> required to adjudicate the Wage Claims. Consequently, the forum selection clause in the Employment Contract does not apply to the wage claims and there accordingly is no basis to dismiss such claims.

> C.     <u>The California Labor Code Claim Is Not Barred By The Forum Selection Clause Because It Is Not Necessary To Interpret The Employment Contract To Resolve Such Claim</u>

Plaintiff's third cause of action is brought pursuant to Section 201 *et seq.* of the California Labor Code. Labor Code section 201(a) provides that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable <u>immediately</u> (emphasis added)." Any California employer who fails to pay a discharged employee all wages due at the time of discharge is liable for all unpaid wages as well as a statutory penalty, attorneys' fee and interest pursuant to Labor Code sections 203, 218.5 and 218.6.

Because Plaintiff's third cause of action also seeks the payment of wages that were due and owing to Plaintiff on the date of his termination, such cause of action is not subject to dismissal on venue grounds for the same reasons as discussed in connection with Plaintiff's first

---

[10]   Indeed, pursuant to California Labor Code section 201(a) (which is the basis of Plaintiff's third cause of action and which is discussed *infra*), an employer <u>must</u> pay a terminated employee all unpaid wages <u>immediately upon termination</u>.

1  and second causes of action.  But there is another, more fundamental reason why the third cause of

2  action is not subject to the forum selection clause and is not subject to dismissal.

3          The statutory scheme set forth in Labor Code section 201 *et seq.* evidences a

4  fundamental public policy of the State of California that all persons and entities providing

5  employment to persons in California must promptly pay all wages due upon termination.  [*See*,

6  *e.g.*, *Gould v. Maryland Sound Industries, Inc.*, 31 Cal.App.4th 1137, 1147 (1995).]  Given the

7  fundamental public policy of the State of California reflected in the statutory scheme provided by

8  Labor Code section 201 *et seq.*, Plaintiff has a right to have his California Labor Code Claim

9

10  adjudicated by a California jury of his peers.

11          Indeed, it would be fundamentally unfair to Plaintiff to force him to bring his claim for

12  violation of Labor Code section 201 *et seq.* in Illinois and force an Illinois jury to determine and

13

14  apply the fundamental public policy of the State of California.  This provides a further, compelling

15  reason why Plaintiff's California Labor Code Claim is not subject to dismissal pursuant to the

16  forum selection clause.[11]

17          D.    The Wrongful Discharge Claim Is Not Barred By The Forum Selection Clause

18                Because It Is Not Necessary To Interpret The Employment Contract To Resolve

19                Such Claim

20          Plaintiff's fourth cause of action is for wrongful discharge in violation of the public policy

21  of the State of California.  As alleged in the first amended complaint, Plaintiff alleges that 4Access

22

23  _____

24  [11]   Paragraph 6.4 of the Employment Contract provides that such contract is to be governed by
       Illinois law.  By his third cause of action, Plaintiff seeks to vindicate his rights under the
25  California Labor Code and the fundamental public policy of the State of California.
       Consequently, the law governing the Employment Contract is inconsistent with the legal basis for
26  Plaintiff's third cause of action, demonstrating further why interpretation of the Employment
       Contract is not required for – and indeed incompatible with – adjudication of the third cause of
27  action.

28

1  terminated his employment in retaliation for Plaintiff's filing of *Popescu I*.  [First Amended

2  Complaint ¶¶ 50-51.]  It is not necessary for the Court to interpret the Employment Contract to

3  adjudicate Plaintiff's Wrongful Discharge Claim.

4          Given that Plaintiff was an at will employee once the term of the Employment Contract

5  expired, 4Access could terminate Plaintiff for any reason or for no reason at all.  As the California

6

7  Supreme Court explained in <u>*Gantt v. Sentry Insurance*</u>, 1 Cal.4th 1083, 1094 (1992), "while an at-

8  will employee may be terminated for no reason, or for an arbitrary or irrational reason, there can

9  be no right to terminate for an unlawful reason or a purpose that contravenes fundamental public

10  policy."  [<u>*See also*</u> <u>*Tameny v. Atlantic Richfield Co.*</u>, 27 Cal.3d 167, 172 (1980).]

11          The language of the Employment Contract parallels California law with respect to the

12  termination of Plaintiff during the at-will period.  As the Court will recall, the Employment

13
   Contract defines the term of Plaintiff's employment as the "Contractual Employment Period (the
14
   period when the Employment Contract was in effect) and the "At Will Employment Period" (the
15
16  period of employment following the expiration of the term of the Employment Contract).

17  Paragraph 3.1 of the Employment Contract provides that Plaintiff's employment could be

18  terminated during the At Will Employment Period for cause or without cause upon appropriate

19  notice.

20          As can be seen from the foregoing, 4Access did not need a reason to terminate Plaintiff's

21  employment.  But what 4Access could not do is what Plaintiff alleges was done – terminate

22
   Plaintiff in retaliation for filing the *Popescu I* litigation.  Because 4Access could terminate
23
24  Plaintiff "for no reason, or for an arbitrary or irrational reason," there is no need in this case to

25  interpret the Employment Contract to determine whether 4Access had a legitimate reason to

26  terminate Plaintiff – it does not matter why 4Access terminated Plaintiff so long as it was not in

27  retaliation for the filing of *Popescu I*.

28

---

***PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR IMPROPER VENUE***

- 13 -

So, the single, sole and only question required for the adjudication of Plaintiff's Wrongful Discharge Claim is whether 4Access did in fact terminate Plaintiff in retaliation for the filing of the *Popescu I* case.  The answer to such question will not be found by interpreting the Employment Contract in any way, but rather by the documentary evidence and testimony about the reason for Plaintiff's termination.[12]  [*See* *Tameny*, *supra*, 27 Cal.3d at 176 (employer's obligation to refrain from discharging an employee in violation of public policy does not depend upon any express or implied promises in the employment contract).]  Consequently, because interpretation of the Employment Contract is not required for the adjudication of Plaintiff's Wrongful Discharge Claim, the forum selection clause in the Employment Contract does not apply to the Wrongful Discharge Claim and there accordingly is no basis to dismiss such claim on venue grounds.

E.    The Stock Options Claim Is Not Barred By The Forum Selection Clause Because It Is Not Necessary To Interpret The Employment Contract To Resolve Such Claim

Plaintiff's fifth cause of action seeks to vindicate his right to receive 4Access stock pursuant to a series of written stock options issued by 4Access to Plaintiff.  Copies of such stock options are submitted herewith as Exhibit 2.  As the Court will see when it reviews Exhibit 2, it is not necessary for the Court to interpret the Employment Contract in order to adjudicate Plaintiff's rights under the written stock options issued by 4Access.  Consequently, the forum selection

---

[12]   The analysis in this case might be different if the Employment Contract provided that Plaintiff could only be terminated for cause during the At Will Employment Period, or if the Employment Contract otherwise specified the grounds that would support Plaintiff's termination during the At Will Employment Period.  For example, Paragraph 3.2 of the Employment Contract details the circumstances that constitute cause for termination during the Contractual Employment Period.  If the Employment Contract required cause for termination during the At Will Employment Period, the Court might be required to interpret the Employment Contract to determine whether cause for Plaintiff's termination existed.  But because 4Access did not require cause to terminate Plaintiff

---

clause in the Employment Contract has no application to Plaintiff's fifth cause of action and does not provide any basis for dismissal.

## III.   IF THE COURT DETERMINES THAT ANY OF THE CLAIMS IN THE FIRST AMENDED COMPLAINT ARE SUBJECT TO THE FORUM SELECTION CLAUSE, PLAINTIFF REQUESTS TRANSFER RATHER THAN DISMISSAL

The forum selection clause in the Employment Contract (Paragraph 6.6) provides that any judicial proceedings "under" the Employment Agreement shall be brought in the Circuit Court of Cook County, Illinois or the United States District Court for the Northern District of Illinois, Eastern Division. Consequently, the federal court for the Northern District of Illinois provides an alternative forum for any claims that may be covered by the forum selection clause.

For the reasons discussed herein, venue for all of the claims in Plaintiff's first amended complaint is proper in this judicial district and the forum selection clause in the Employment Contract does not apply to any of the claims in the first amended complaint. Consequently, the present motion should be denied as to all of the causes of action in the first amended complaint.

/././

/././

/././

/././

/././

/././

/././

/././

---

during the At Will Employment Period, such interpretation of the Employment Contract is not required.

1    However, to the extent that the Court concludes that any of the causes of action in the first

2    amended complaint are subject to the forum selection clause, Plaintiff asks that the Court transfer

3    such claims to the United States District Court for the Northern District of Illinois, Eastern

4    Division pursuant to 28 U.S.C. § 1404(a) and/or 28 U.S.C. § 1406(a) instead of dismissing such

5    claims.

6

7

8

9    DATED:  May 19, 2008                THE AFFINITY LAW GROUP APC

10

11                                    By: */s/ Gregory P. Goonan*
                                       Gregory P. Goonan
12                                     Attorneys for Plaintiff
                                       VAL POPESCU
13                                     E-mail: ggoonan@affinity-law.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

### Certificate of Service

The undersigned hereby certifies that on this 19th day of May 2008, a true and accurate copy of the attached document was electronically filed with the Court, to be served by operation of the Court's electronic filing system, upon the following:

Douglas J. Rovens
Jeffrey S. Renzi
Squire Sanders & Dempsey LLP
555 South Flower Street, Suite 3100
Los Angeles, CA  90071-2300
Attorneys for Defendant 4Access Communications Company


*/s/ Gregory P. Goonan*
Gregory P. Goonan

Gregory P. Goonan (Cal. Bar #119821)
**The Affinity Law Group APC**
600 West Broadway, Suite 400
San Diego, CA 92101
Tel: 619-702-4335
Fax: 619-243-0088
E-mail: ggoonan@affinity-law.com

Attorneys for Plaintiff
VAL POPESCU

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAL POPESCU, an individual; | Case No. 08 CV 525 JM (RBB) |
| Plaintiff, | **DECLARATION OF VAL POPESCU IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE** |
| vs. | |
| 4ACCESS COMMUNICATIONS COMPANY, a Delaware corporation, and DOES 1 through 10, Inclusive | |
| Defendants. | Hearing Date: May 30, 2008<br>Time: 1:30 p.m.<br>Court: 16 (Hon. Jeffrey T. Miller) |
| | **ORAL ARGUMENT REQUESTED** |

I, Val Popescu, state as follows for my declaration:

1. I am the plaintiff in this action. I offer this declaration in support of my opposition to the motion by 4Access Communications Company ("4Access") to dismiss my first amended complaint for improper venue. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently thereto.

2.  I resided in San Diego County at all times relevant to the matters addressed by my first amended complaint.

3.  Defendant 4Access maintained a business office and did business in San Diego County at all times relevant to the matters addressed by my first amended complaint.

4.  4Access terminated my employment on January 10, 2007.  All services I performed for 4Access were performed at 4Access' San Diego office, and I was working in 4Access' San Diego office on the date of my termination.

5.  By my first amended complaint, I have asserted claims for wages that 4Access owes me and failed to pay me for work performed from March 1, 2004 through the date of my termination on January 10, 2007.  The amount of wages that 4Access was obligated to pay me for such period is established by a letter agreement between me and 4Access dated February 24, 2002.  A true and correct copy of such February 24, 2002 letter is submitted as Exhibit 1 to this declaration.

6.  By my first amended complaint, I also have asserted a claim against 4Access because it has failed to issue me stock pursuant to vested stock options that 4Access granted to me.  True and correct copies of such stock options are submitted as Exhibit 2 to this declaration.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 16, 2008 at San Diego, CA.

_____
Val Popescu

2. I resided in San Diego County at all times relevant to the matters addressed by my first amended complaint.

3. Defendant 4Access maintained a business office and did business in San Diego County at all times relevant to the matters addressed by my first amended complaint.

4. 4Access terminated my employment on January 10, 2007. All *services* I performed for 4Access were performed at 4Access' San Diego office, and I was working in 4Access' San Diego office on the date of my termination.

5. By my first amended complaint, I have asserted claims for wages that 4Access owes me and failed to pay me for work performed from March 1, 2004 through the date of my termination on January 10, 2007. The amount of wages that 4Access was obligated to pay me for such period is established by a letter agreement between me and 4Access dated February 24, 2002. A true and correct copy of such February 24, 2002 letter is submitted as Exhibit 1 to this declaration.

6. By my first amended complaint, I also have asserted a claim against 4Access because it has failed to issue me stock pursuant to vested stock options that 4Access granted to me. True and correct copies of such stock options are submitted as Exhibit 2 to this declaration.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 16, 2008 at San Diego, CA.

Val Popescu

1

## Certificate of Service

2    The undersigned hereby certifies that on this 19th day of May 2008, a true and accurate

3    copy of the attached document was electronically filed with the Court, to be served by operation of
the Court's electronic filing system, upon the following:

4

5    Douglas J. Rovens
Jeffrey S. Renzi
Squire Sanders & Dempsey LLP

6    555 South Flower Street, Suite 3100
Los Angeles, CA  90071-2300

7    Attorneys for Defendant 4Access Communications Company

8

9

10    */s/ Gregory P. Goonan*
Gregory P. Goonan

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**4ACCESS**
COMMUNICATIONS COMPANY

January 10, 2007

Mr. Val Popescu
P. O. Box 569
Rancho Santa Fe, CA   92067

Dear Val:

After much consideration, we regret that we must terminate your employment at 4Access Communications Company (the "Company").

Although the Company has no obligation to provide you with any kind of severance package, the Company is prepared to assist you with your transition to new employment. This letter sets forth the terms of the Separation Agreement (the "Agreement") that the Company is offering to you to aid in your employment transition.

1. Separation.    Your last day of work with the Company and your employment termination date will be January 10, 2007 (the "Separation Date"). You will no longer represent to anyone that you are still an employee of the Company or any of its affiliates. You also will not apply for reemployment with the Company or any of its affiliates in the future.

2. Accrued Salary and Paid Time Off.   On the Separation Date, the Company will pay you all accrued and unpaid salary, and all accrued and unused vacation earned through the Separation Date, subject to standard payroll deductions and withholdings.   You and the Company agree that the total of such amounts is (i) $94,946.81 in accrued and unpaid salary. You have taken all of vacation days.   You and the Company also agree that the statue of limitations for certain portions of such accrued and unpaid salary has expired, but the Company is willing to pay such portions to assist you in your transition to new employment, subject to the terms of this Agreement and in exchange for the release provided below.  You are entitled to these payments (to the extent the applicable statute of limitations has not expired) regardless of whether or not you sign this Agreement.

3. Health Insurance.   To the extent provided by the federal COBRA law or, if applicable, state insurance laws, and by the Company's current group health insurance policies, you will be eligible to continue your group health insurance benefits at your own expense. Later, you may be able to convert to an individual policy through the provider of the Company's health insurance, if you wish.

4. Other Compensation or Benefits.   You acknowledge that, except as expressly provided in this Agreement, you will not receive any additional compensation, severance or benefits after the Separation Date.

5. Expense Reimbursements.   You agree that, within ten (10) days of the Separation Date, you will submit your final documented expense reimbursement statement reflecting all business expenses you incurred through the Separation Date, if any, for which you seek

ATLANTA • CHICAGO • SAN DIEGO

One North LaSalle • Suite 2015 • Chicago, IL 60602 • Telephone: 312.223.9779 • Fax: 312.223.9559 • Internet: www.4access-comm.com

reimbursement.  The Company will reimburse you for these expenses pursuant to its regular business practice.

6.  Return of Company Property.  By the Separation Date, you agree to return to the Company all Company documents (and all copies thereof) and other Company property that you have had in your possession at any time, including, but not limited to, Company files, notes, drawings, records, business plans and forecasts, financial information, specifications, computer-recorded information, tangible property (including, but not limited to, computers, credit cards, entry cards, identification badges and keys; and, any materials of any kind that contain or embody any proprietary or confidential information of the Company (and all reproductions thereof)).

7.  Proprietary Information Obligations.  Both during and after your employment you acknowledge your continuing obligations under your Proprietary Information and Inventions Agreement not to use or disclose any confidential or proprietary information of the Company without prior written authorization from a duly authorized representative of the Company.

8.  Confidentiality.  The provisions of this Agreement will be held in strictest confidence by you and the Company and will not be publicized or disclosed in any manner whatsoever; provided, however, that:  (a) you may disclose this Agreement to your immediate family; (b) the parties may disclose this Agreement in confidence to their respective attorneys, accountants, auditors, tax preparers, and financial advisors; (c) the Company may disclose this Agreement as necessary to fulfill standard or legally required corporate reporting or disclosure requirements; and (d) the parties may disclose this Agreement insofar as such disclosure may be necessary to enforce its terms or as otherwise required by law.  In particular, and without limitation, you agree not to disclose the terms of this Agreement to any current or former Company employee.

9.  Nondisparagement.  Both you and the Company agree not to disparage the other party, and the other party's officers, directors, employees, shareholders and agents, in any manner likely to be harmful to them or their business, business reputation or personal reputation; provided that, both you and the Company will respond accurately and fully to any question, inquiry or request for information when required by legal process.

10.  Dismissal of Lawsuit; Release of All Claims.  You hereby agree to take all actions necessary to dismiss Case Number GIN056734, filed by you in the Superior Court of California, County of San Diego, against the Company within five (5) business days..  Except as otherwise set forth in this Agreement, you hereby release, acquit and forever discharge the Company, and its officers, directors, agents, servants, employees, attorneys, shareholders, successors, assigns and affiliates, of and from any and all claims, liabilities, demands, causes of action, costs, expenses, attorneys' fees, damages, indemnities and obligations of every kind and nature, in law, equity, or otherwise, known and unknown, suspected and unsuspected, disclosed and undisclosed, arising out of or in any way related to agreements, events, acts or conduct at any time prior to and including the execution date of this Agreement, including but not limited to: all such claims and demands directly or indirectly arising out of or in any way connected with your employment with the Company or the termination of that employment; claims or demands related to salary, bonuses, commissions, stock, stock options, or any other ownership interests in the Company, vacation pay, fringe benefits, expense reimbursements, severance pay, or any

other form of compensation; claims pursuant to any federal, state or local law, statute, or cause of action including, but not limited to, the federal Civil Rights Act of 1964, as amended; the federal Americans with Disabilities Act of 1990; the federal Age Discrimination in Employment Act of 1967, as amended ("ADEA"); the California Fair Employment and Housing Act, as amended; tort law; contract law; wrongful discharge; discrimination; harassment; fraud; defamation; emotional distress; and breach of the implied covenant of good faith and fair dealing.

11. ADEA Waiver. You acknowledge that you are knowingly and voluntarily waiving and releasing any rights you may have under the ADEA, as amended. You also acknowledge that the consideration given for the waiver and release in the preceding paragraph hereof is in addition to anything of value to which you were already entitled. You further acknowledge that you have been advised by this writing, as required by the ADEA, that: (a) your waiver and release do not apply to any rights or claims that may arise after the execution date of this Agreement; (b) you have been advised hereby that you have the right to consult with an attorney prior to executing this Agreement; (c) you have twenty-one (21) days to consider this Agreement (although you may choose to voluntarily execute this Agreement earlier); (d) you have seven (7) days following the execution of this Agreement by the parties to revoke the Agreement; and (e) this Agreement will not be effective until the date upon which the revocation period has expired, which will be the eighth day after this Agreement is executed by you; provided that, the Company has also executed this Agreement by that date ("Effective Date").

12. Waiver. In granting the release herein, you understand that this Agreement includes a release of all claims known or unknown. In giving this release, which includes claims which may be unknown to you at present, you acknowledge that you have read and understand Section 1542 of the California Civil Code which reads as follows: **"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."** You hereby expressly waive and relinquish all rights and benefits under that section and any law of any jurisdiction of similar effect with respect to your release of any unknown or unsuspected claims you may have against the Company.

13. Breach of this Agreement. In the event that you breach any of your obligations under this Agreement or as otherwise imposed by law, the Company will be entitled to immediate return of any and all benefits paid to you under this Agreement and to obtain injunctive relief and all other relief provided by law or equity. All other duties and obligations under this Agreement, however, including, without limitation, your waivers and releases, shall remain in full force and effect.

14. Miscellaneous. This Agreement constitutes the complete, final and exclusive embodiment of the entire agreement between you and the Company with regard to this subject matter. It is entered into without reliance on any promise or representation, written or oral, other than those expressly contained herein, and it supersedes any other such promises, warranties or representations. This Agreement may not be modified or amended except in a writing signed by both you and a duly authorized officer of the Company. This Agreement will bind the heirs, personal representatives, successors and assigns of both you and the Company, and inure to the benefit of both you and the Company, their heirs, successors and assigns. If any provision of this

Agreement is determined to be invalid or unenforceable, in whole or in part, this determination will not affect any other provision of this Agreement and the provision in question will be modified by the court so as to be rendered enforceable. This Agreement will be deemed to have been entered into and will be construed and enforced in accordance with the laws of the State of California as applied to contracts made and to be performed entirely within California.

If this Agreement is acceptable to you, please sign below and return the original to me on this date. I wish you good luck in your future endeavors.

Sincerely,

4ACCESS COMMUNICATIONS COMPANY


_____

Steven Davis
President & CEO




AGREED:


_____

Val Popescu

4Access Communications Company
Final payment to Val Popescu
January 10, 2007

1)  Salary due to difference between annual salary of $175,000 and paid salary of $120,000

Period involed   September 1, 2003 through March 31, 2005.

Difference per month              4,583.33

Number of months                        19

                          Total    87,083.27

2)  Missed payrolls in 2003

Period ending      4/30/2003      2,000.00

                   5/15/2003      1,000.00

                                  3,000.00

3)  January 1-10, 2007
       1/1-1/15    7291.67
       1/1-1/10    0.667          4,863.54

       TOTAL gross               94,946.81

**Val Popescu**
**Payroll Recap**
**Jan 10, 2007**

| | Difference $175,000 and $120,000 | Missed Payrolls in 2003 | Pay Period Jan 1-10, 2007 | Total |
|---|---|---|---|---|
| Gross | $87,083.27 | $ 3,000.00 | $4,863.54 | $94,946.81 |
| Soc Sec | 5,399.16 | 186.00 | 296.89 | 5,882.05 |
| Medicare | 1,262.71 | 43.50 | 69.43 | 1,375.64 |
| Fed W/H | 7,053.56 | 246.14 | 392.30 | 7,692.00 |
| State W/H | 4,065.66 | 141.88 | 226.11 | 4,433.65 |
| DBL | 500.33 | - | - | 500.33 |
| 401k | - | - | - | - |
| FSA | - | - | - | - |
| Dependent Care | - | - | - | - |
| Insurance | - | - | 75.00 | 75.00 |
| Net | $ 68,801.85 | $ 2,382.48 | $ 3,803.81 | $ 74,988.14 |

## 4ACCESS COMMUNICATIONS COMPANY
## STOCK OPTION GRANT NOTICE
### (2002 EQUITY INCENTIVE PLAN)

4Access Communications Company (the "Company"), pursuant to its 2002 Equity Incentive Plan (the "Plan"), hereby grants to Optionholder an option to purchase the number of shares of the Company's Class B Common Stock set forth below. This option is subject to all of the terms and conditions as set forth herein and in the Stock Option Agreement, the Plan and the Notice of Exercise, all of which are attached hereto and incorporated herein in their entirety.

Optionholder:                                Val Popescu

Date of Grant:                               July 21, 2004

Vesting Commencement Date:                   July 21, 2004

Number of Shares Subject to Option:          25,000

Exercise Price Per Share:                    $0.23

Expiration Date:                             July 21, 2014

TYPE OF GRANT:          [X ] Incentive Stock Option      [ ] Nonstatutory Stock Option

EXERCISE SCHEDULE:      Same as Vesting Schedule

VESTING SCHEDULE:       1/4th of the shares vest one year after the Vesting Commencement Date. 1/48th of the shares vest monthly thereafter over the next three years.

PAYMENT:                By one or a combination of the following items (described in the Stock Option Agreement):

                        By cash or check
                        Pursuant to a Regulation T Program if the Shares are publicly traded
                        By delivery of already-owned shares if the Shares are publicly traded

ADDITIONAL TERMS/ACKNOWLEDGEMENTS: The undersigned Optionholder acknowledges receipt of, and understands and agrees to and is bound by, this Grant Notice, the Stock Option Agreement and the Plan. Optionholder further acknowledges that as of the Date of Grant, this Grant Notice, the Stock Option Agreement and the Plan set forth the entire understanding between Optionholder and the Company regarding the acquisition of stock in the Company and supersede all prior oral and written agreements on that subject with the exception of (i) options previously granted and delivered to Optionholder under the Plan, and (ii) the following agreements only:

OTHER AGREEMENTS:

_____

_____

This Grant Notice is null and void if not executed and returned to the Company by October 31, 2004.

4ACCESS COMMUNICATIONS
COMPANY                                          OPTIONHOLDER:

By:_____                    _____
     STEVEN D. DAVIS                                 Signature
     PRESIDENT

Date:_____                          Date:____9/17/04_____

ATTACHMENTS:    Stock Option Agreement, 2002 Equity Incentive Plan, Notice of
                Exercise

## 4ACCESS COMMUNICATIONS COMPANY
## STOCK OPTION GRANT NOTICE
## (2002 EQUITY INCENTIVE PLAN)

4Access Communications Company (the "Company"), pursuant to its 2002 Equity Incentive Plan (the "Plan"), hereby grants to Optionholder an option to purchase the number of shares of the Company's Common Stock set forth below. This option is subject to all of the terms and conditions as set forth herein and in the Stock Option Agreement, the Plan and the Notice of Exercise, all of which are attached hereto and incorporated herein in their entirety.

Optionholder:                                    Val Popescu

Date of Grant:                                   June 30, 2006

Vesting Commencement Date:                       June 30, 2006

Number of Shares Subject to Option:              100,000

Exercise Price Per Share:                        $.13

Expiration Date:                                 June 30, 2011

TYPE OF GRANT:           [X] Incentive Stock Option    [ ] Nonstatutory Stock Option

EXERCISE SCHEDULE:       [X] Same as Vesting Schedule  [ ] Early Exercise Permitted

VESTING SCHEDULE:        100% of the shares vest on the Vesting Commencement Date.

PAYMENT:                 By one or a combination of the following items (described in the Stock Option Agreement):

                         By cash or check
                         By delivery of already-owned shares if the Shares are publicly traded

ADDITIONAL TERMS/ACKNOWLEDGEMENTS: The undersigned Optionholder acknowledges receipt of, and understands and agrees to and is bound by, this Grant Notice, the Stock Option Agreement and the Plan. Optionholder further acknowledges that as of the Date of Grant, this Grant Notice, the Stock Option Agreement and the Plan set forth the entire understanding between Optionholder and the Company regarding the acquisition of stock in the Company and supersede all prior oral and written agreements on that subject with the exception of (i) options previously granted and delivered to Optionholder under the Plan, and (ii) the following agreements only ((i) and (ii) together, the "Acknowledged Agreements"):

OTHER AGREEMENTS:

None.

_____

RELEASE:                        IN EXCHANGE FOR THE OPTIONS GRANTED
                                HEREUNDER, OPTIONHOLDER FOREVER GIVES
                                UP, WAIVES AND RELEASES ANY AND ALL
                                CLAIMS OF ANY AND EVERY KIND HE MAY HAVE
                                AS OF THE DATE OF THIS AGREEMENT WITH
                                REGARD TO CAPITAL STOCK OR OTHER
                                SECURITIES OF THE COMPANY OTHER THAN
                                PURSUANT TO THIS GRANT NOTICE AND THE
                                ACKNOWLEDGED AGREEMENTS.

This Grant Notice is null and void if not executed and returned to the Company by June 30, 2006.

4ACCESS COMMUNICATIONS
COMPANY                              OPTIONHOLDER:

By: _____          _____

    STEVEN D. DAVIS                      Signature
    PRESIDENT

Date: ___5/15/2006____               Date: 6-8-2006

ATTACHMENTS:    Stock Option Agreement, 2002 Equity Incentive Plan, Notice of
                Exercise

- 2 -

# 4ACCESS COMMUNICATIONS COMPANY
## STOCK OPTION GRANT NOTICE
### (2002 EQUITY INCENTIVE PLAN)

4Access Communications Company (the "Company"), pursuant to its 2002 Equity Incentive Plan (the "Plan"), hereby grants to Optionholder an option to purchase the number of shares of the Company's Class B Common Stock set forth below. This option is subject to all of the terms and conditions as set forth herein and in the Stock Option Agreement, the Plan and the Notice of Exercise, all of which are attached hereto and incorporated herein in their entirety.

| | |
|---|---|
| Optionholder: | Valeri Popescu |
| Date of Grant: | July 24, 2002 |
| Vesting Commencement Date: | March 1, 2002 |
| Number of Shares Subject to Option: | 20,000 |
| Exercise Price Per Share: | $.01 |
| Expiration Date: | July 23, 2012 |

TYPE OF GRANT:          [ x ] Incentive Stock Option      [ ] Nonstatutory Stock Option

EXERCISE SCHEDULE:      Same as Vesting Schedule

VESTING SCHEDULE:       1/4th of the shares vest one year after the Vesting Commencement Date. 1/48th of the shares vest monthly thereafter over the next three years.

PAYMENT:                By one or a combination of the following items (described in the Stock Option Agreement):

> By cash or check
> Pursuant to a Regulation T Program if the Shares are publicly traded
> By delivery of already-owned shares if the Shares are publicly traded

ADDITIONAL TERMS/ACKNOWLEDGEMENTS: The undersigned Optionholder acknowledges receipt of, and understands and agrees to and is bound by, this Grant Notice, the Stock Option Agreement and the Plan. Optionholder further acknowledges that as of the Date of Grant, this Grant Notice, the Stock Option Agreement and the Plan set forth the entire understanding between Optionholder and the Company regarding the acquisition of stock in the Company and supersede all prior oral and written agreements on that subject with the exception of (i) options previously granted and delivered to Optionholder under the Plan, and (ii) the following agreements only:

162654.1\1781-15378

OTHER AGREEMENTS:

_____

_____

This Grant Notice is null and void if not executed and returned to the Company by August 31, 2002.

4ACCESS COMMUNICATIONS
COMPANY

OPTIONHOLDER:

By: _____
    STEVEN D. DAVIS
    PRESIDENT

_____
Signature

Date: 7/24/02

Date: 8/27/02

ATTACHMENTS:    Stock Option Agreement, 2002 Equity Incentive Plan, Notice of
                Exercise