## UNITED STATES DISTRICT COURT

**Southern District of California**

Office Of The Clerk
880 Front Street, Room 4290
San Diego, California 92101–8900
Phone: (619) 557–5600
Fax: (619) 702–9900

W. Samuel Hamrick, Jr.,
Clerk of Court

June 12, 2008

Clerk, U.S. District Court
Northern District of Illinois, Eastern Division
219 South Dearborn Street, 20th Floor
Chicago, IL 60604

Re: Val Popescu v. 4Access Communications Company, et al., Case No. 3:08–cv–00525–JM–RBB

Dear Sir or Madam:

Pursuant to Order transferring the above–entitled action to your District, we are transmitting herewith our entire original file (excepting said Order).

Enclosed are a certified copy of our Docket and the Order transferring the action, the originals of which we are retaining.

Please acknowledge receipt on the copy of this letter and return. Thank you.

Sincerely yours,

W. Samuel Hamrick, Jr.,
Clerk of the Court

By: s/ T. Lee, Deputy Clerk

Copy to Attorney for Plaintiffs:
Copy to Attorney for Defendants:

RECEIVED ITEMS DESCRIBED

THIS DATE OF_____
AND ASSIGNED CASE NUMBER_____

CLERK, U.S. DISTRICT COURT

By:_____, Deputy

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VAL POPESCU,<br><br>                              Plaintiff,<br>  vs.<br><br>4ACCESS COMMUNICATIONS COMPANY, et al.,<br><br>                            Defendants. | CASE NO. 08 CV 0525 JM (RBB)<br><br>**ORDER DENYING MOTION TO DISMISS, TRANSFERRING CASE** |

      On January 9, 2008, Plaintiff Val Popescu filed this action against Defendant 4Access Communications Co. in San Diego Superior Court. Defendant is a Delaware corporation that formerly employed Plaintiff as Chief Technology Officer. Defendant removed the case on March 20, 2008, based on the court's diversity jurisdiction. The case was low-numbered to this court on April 4, 2008. This action constitutes Plaintiff's second attempt to maintain a lawsuit against Defendant in connection with Plaintiff's former employment. On March 26, 2007, the court dismissed the first action for improper venue under Federal Rule of Civil Procedure 12(b)(3). (Popescu v. 4Access Communications, Inc., 2007 U.S. Dist. LEXIS 21822, No. 07cv0063 JM (AJB) (S.D. Cal. Mar. 26, 2007) ("Popescu I").) In the present action, the first amended complaint ("FAC") contains five claims under California law. Defendant now moves to dismiss the FAC for improper venue. The court heard oral arguments on June 6, 2008. For the reasons set forth below, the court **DENIES** the motion to dismiss and **TRANSFERS** the entire action to the United States District Court for the Northern

District of Illinois, Eastern Division.

## I.   BACKGROUND

On February 24, 2002, 4Access President and CEO Steven Davis issued a written letter offering to employ Plaintiff (the "Employment Letter"). (See Decl. of G. Goonan, Exh. 1 (Employment Letter).) Plaintiff accepted the offer in writing on February 25, 2002. (Id.) On February 27, 2002, the parties signed a written agreement (the "Employment Agreement") providing for Plaintiff's employment as Chief Technology Offer. (Mot., Decl. of S. Davis, Exh. A (Employment Agreement).) The Employment Agreement provided in pertinent part that the Agreement would end after 24 months (the "Contractual Employment Period"). (Id. at ¶ 2.1.) Thereafter, Plaintiff's employment would continue at the will of Defendant (the "At-Will Employment Period"). (Id.) During the Contractual Employment Period, Defendant would pay Plaintiff an annual base salary of $175,000. (Id. at ¶ 2.4.) During the At-Will Employment Period, Defendant could increase or decrease the base salary in its discretion at any time. (Id.) The Agreement also included the following forum selection clause: "Any judicial proceedings between the parties under this Agreement shall be brought in the Circuit Court of Cook County, Illinois, or the United States District Court for the Northern District of Illinois, Eastern District."[1]  (Id. at ¶ 6.6 (forum selection clause).) Plaintiff's employment lasted until termination by Defendant in January 2007.

Plaintiff asserts five claims in the FAC: (1) breach of contract caused by failure to pay wages; (2) labor supplied; (3) violation of California Labor Code § 201, et seq., due to failure to pay wages; (4) wrongful discharge in violation of public policy; and (5) breach of contract caused by failure to issue stock options.

## II.   DISCUSSION

### A.   Legal Standards

The court treats a motion to dismiss pursuant to a forum selection clause as a Rule 12(b)(3) motion to dismiss for improper venue. See Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996). When ruling on a 12(b)(3) motion, the court does not accept the allegations as true and

---

[1] The court interprets this clause as referring to the Northern District of Illinois, Eastern Division, which encompasses Cook County.

1 may consider matters outside the pleadings.  Id.

2      Federal law governs the enforceability of forum selection clauses.  <u>Manetti-Farrow, Inc. v.</u>
3 <u>Gucci America, Inc.</u>, 858 F.2d 509, 513 (9th Cir. 1988).  Forum selection clauses are "prima facie
4 valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable
5 under the circumstances."  <u>M/S Bremen v. Zapata Off-shore Co.</u>, 407 U.S. 1, 10 (1972) (internal
6 quotation marks omitted) (enforcing parties' choice to litigate disputes in London, England); <u>see also</u>
7 <u>Pelleport Investors, Inc. v. Budco Quality Theatres</u>, 741 F.2d 273, 279 (9th Cir. 1984) (applying
8 Bremen rule to domestic forum selection questions).  The presence of fraud, undue influence,
9 "overweening bargaining power," or serious inconvenience to the parties makes enforcement of a
10 forum selection clause unreasonable.  <u>Bremen</u>, 407 U.S. at 12-13, 16-17; <u>Docksider, Ltd. v. Sea</u>
11 <u>Technology, Ltd.</u>, 875 F.2d 762, 763 (9th Cir. 1989).  The party resisting dismissal must meet a
12 "'heavy burden of proof' . . . to set aside the clause on grounds of inconvenience."  <u>Carnival Cruise</u>
13 <u>Lines v. Shute</u>, 499 U.S. 585, 595 (1990) (quoting <u>Bremen</u>, 407 U.S. at 17).

14      Both contract and tort claims may be subject to forum selection clauses, and the applicability
15 of a forum selection clause to a tort claim "depends on whether resolution of the claim[] relates to
16 interpretation of the contract."  <u>Manetti-Farrow</u>, 858 F.2d at 514; <u>see also</u> <u>Bender Shipbuilding &</u>
17 <u>Repair Co., Inc. v. The Vessel Drive Ocean V</u>, 123 F. Supp. 2d 1201, 1207 (S.D. Cal. 1998) (same),
18 aff'd sub nom. <u>Odin Shipping Ltd. v. Drive Ocean V MV</u>, 221 F.3d 1348 (9th Cir. 2000)
19 (unpublished).

20      **B.**    **Claims to Which the Forum Selection Clause Applies**

21      Defendant argues that the forum selection clause applies to all five claims in the FAC, as in
22 <u>Popescu I</u>, whereas Plaintiff claims that the clause governs none of the current claims.

23      In <u>Popescu I</u>, the court found that "resolution of Plaintiff's claim for wages owed during the
24 At-Will Employment Period 'relates to interpretation of the contract.'"  <u>Popescu I</u>, 2007 U.S. Dist.
25 LEXIS 21822 at *4-5 (quoting <u>Manetti-Farrow</u>, 858 F.2d at 514).  The court reasoned that the parties'
26 employment relationship lay at the center of the case and "flow[ed] from the [Employment
27 Agreement]."  <u>Popescu I</u>, 2007 U.S. Dist. LEXIS 21822 at *5.  Accordingly, the court concluded that
28 the forum selection clause must be enforced in regard to each of Plaintiff's claims.  The court also

1  rejected Plaintiff's offer to waive his Contractual Employment Period damages: "If tort claims flowing
2  out of a contractual relationship may be subject to forum selection clauses, Manetti-Farrow, 858 F.2d
3  at 514, then at-will employment damages growing out of the initial Contractual Employment Period
4  would likewise be subject to the [forum selection] clause in this case." Popescu I, 2007 U.S. Dist.
5  LEXIS 21822 at *5 n.1.

6        The FAC differs from the complaint in Popescu I in two relevant ways. First, in Popescu I,
7  the claims arose out of both the Contractual Employment Period and the At-Will Employment Period.
8  The FAC's counterparts cover only the At-Will Employment Period. Second, the complaint in
9  Popescu I did not contain claims for wrongful discharge or breach of contract caused by failure to
10 issue stock options, and lacked a freestanding claim for violation of the California Labor Code. The
11 FAC contains all three claims.

12       Plaintiff argues that the Employment Agreement does not govern the claims in the FAC for
13 several reasons. Citing the distinction between the At-Will Employment Period and the entire
14 employment period, he disputes the court's earlier conclusion that his employment during the At-Will
15 Employment Period requires interpretation of the Employment Agreement. This argument is not
16 persuasive. As Defendant argues in its reply, the Employment Agreement establishes the duties,
17 salary, terms and nature of Plaintiff's employment. The Agreement provides that Plaintiff would
18 receive a base salary of $175,000 during the Contractual Employment Period, and that Defendant may
19 increase or decrease the base salary at its discretion at any time during the At-Will Employment
20 Period. (Employment Agreement at ¶ 2.4.) Thus, the court must look to the Employment Agreement
21 to determine Plaintiff's salary in connection with Plaintiff's wage claims (nos. 1 & 2) and California
22 Labor Code claim (no. 3). Because the Agreement establishes Plaintiff's at-will status at the time of
23 his termination, the court must also look to the Agreement to evaluate Plaintiff's claim for wrongful
24 termination (no. 4). Contrary to Plaintiff's argument, the court cannot assess Defendant's motion in
25 a vacuum.

26       As to Plaintiff's claim for breach of contract caused by failure to issue stock options (no. 5),
27 the analysis is less clear. Plaintiff offers a conclusory argument that the court need not interpret the
28 Employment Agreement to adjudicate the stock option claim. Defendant responds that the stock

1  option claim relates to the Employment Agreement because Defendant issued the stock options during
2  Plaintiff's employment as an incentive to maximize the company's results. (Reply at 5; see also FAC
3  at 2 ¶ 6 (Defendant granted stock options from July 2002 until June 30, 2006); Employment Letter at
4  1 (referring to "participation in the company stock option plan . . . to show the company's appreciation
5  for [Plaintiff's] hard work and dedication up to this point"); Opp'n, Stock Option Grant Notices
6  (referring to "2002 Equity Incentive Plan" and describing grants as "Incentive Stock Option[s]").)
7  The record suggests that some of the options vested upon commencement of Plaintiff's employment
8  and that all of the options constituted a benefit for which Plaintiff qualified irrespective of the length
9  of his employment. This supports Plaintiff's argument that the forum selection clause does not apply
10 to the stock option claim. On the other hand, the record does not conclusively resolve the connection
11 between Plaintiff's employment and his stock options. In any event, the court need not decide whether
12 the forum selection clause applies to the stock option claim because Plaintiff's counsel conceded at
13 oral argument that, if the court granted the motion as to the other four claims, Plaintiff would prefer
14 that the entire complaint remain intact.

15       Plaintiff also argues that the Employment Agreement does not govern his claims because the
16 employment relationship during the At-Will Employment Period is governed instead by the
17 Employment Letter. Although Plaintiff inadvertently failed to include the Employment Letter in his
18 opposition, he supplied a copy in a later filing. Plaintiff states that the parties did not bring this letter
19 to the court's attention in Popescu I because Popescu I focused on the Employment Agreement and
20 the Contractual Employment Period. (Opp'n at 5-6.)

21       Under California law, a written contract may be modified by another written contract. Cal.
22 Civ. Code § 1698(a); see also id. § 1698(d) (principles such as estoppel still apply). "[A]n executory
23 written modification must meet the requirements of a valid contract," including new consideration.
24 Motown Record Corp. v. Brockert, 160 Cal. App. 3d 123, 133 (1984). Plaintiff fails to argue or show
25 that this rule does not apply in this case. To the contrary, the evidence before the court demonstrates
26 that the parties intended the Employment Agreement to be a valid and binding expression of the
27 employment terms. Most importantly, the Employment Letter explicitly contemplates that the parties
28 would later enter into the Employment Agreement. The court therefore rejects Plaintiff's invitation

1  to disregard the Employment Agreement.

2       In sum, Plaintiff fails to persuade that the analysis in Popescu I should not apply to most of
3  the claims in the instant case. The court therefore concludes that the forum selection clause applies
4  to the claims for breach of contract caused by failure to pay wages; labor supplied; violation of
5  California Labor Code § 201, et seq., due to failure to pay wages; and wrongful discharge in violation
6  of public policy. Pursuant to Plaintiff's request that the court not bifurcate the claims, the court does
7  not decide whether the forum selection clause applies to the claim for breach of contract caused by
8  failure to issue stock options.

9      **C.    Transfer**

10      At oral argument, Plaintiff requested that, if the court determines that the forum selection
11 clause governs all claims other than the stock option claim, the court transfer the entire action to the
12 United States District Court for the Northern District of Illinois, Eastern Division. Defendant
13 similarly requested such a transfer if the court concludes that the forum selection clause applies to
14 some but not all of Plaintiff's claims. (See Reply at 5.)

15      Two statutes authorize a federal district court to transfer a case to another venue. Under 28
16 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong
17 division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district
18 or division in which it could have been brought." See Johnson v. Payless Drug Stores, 950 F.2d 586,
19 588 (9th Cir. 1991) (decision between dismissal and transfer is discretionary). Under 28 U.S.C. §
20 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court
21 may transfer any civil action to any other district or division where it might have been brought." See
22 Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (§ 1404(a) motion to transfer requires
23 "individualized, case-by-case consideration of convenience and fairness," in which forum-selection
24 clause is "a significant factor"); see also Jones v. GNC Franchising, Inc., 211 F.3d 495, 499 (9th Cir.
25 2000) (listing additional factors). Here, venue in this district is improper as to the first four claims and
26 may be proper as to the stock option claim. Section 1406(a) thus authorizes the court to transfer the
27 first four claims to the Northern District of Illinois, Eastern Division, and either § 1404(a) or § 1406(a)
28 authorizes the court to transfer the stock option claim to the Northern District of Illinois, Eastern

Division. Pursuant to the parties' requests, in light of the forum selection clause, and in the interest of justice, the court orders that the entire action be transferred to the Northern District of Illinois, Eastern Division.

### III. CONCLUSION

The court concludes that the forum selection clause applies to at least the first four claims in the FAC. Rather than dismiss those four claims and allow the stock option claim possibly to proceed in this district, the court transfers the entire action to the United States District Court for the Northern District of Illinois, Eastern Division. Accordingly, the court **DENIES** the motion to dismiss.

Once this case is transferred, the Clerk of Court is instructed to close this file upon the Northern District of Illinois, Eastern Division assigning a case number to the case.

**IT IS SO ORDERED.**

DATED: June 11, 2008

_____
Hon. Jeffrey T. Miller
United States District Judge

cc:      All parties